**2004 ME 25**

**Kelli RICHARDS**

v.

**Alfred THOMPSON.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Nov. 25, 2003.

Decided: Feb. 27, 2004.

---

David J. Van Baars, Shankman & Associates, Brunswick, for plaintiff.

Defendant did not file a brief.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Kelli Richards appeals from a judgment entered in the District Court (West Bath, *Field, J.*) granting Alfred Thompson's motion for contempt. Richards contends that the District Court's finding of contempt was not supported by clear and convincing evidence and that it exceeded its discretion by: (1) finding her in contempt; (2) ordering the modification of the parties' parental rights and responsibilities; and (3) reserving for decision whether to impose a punitive sanction in addition to the remedial sanctions contained in its order. We agree with Richards that the court exceeded the scope of its discretion by reserving the possibility of imposing additional punitive sanctions and modify the judgment accordingly. We affirm the judgment as modified.

## I. BACKGROUND

[¶ 2] Richards and Thompson are the parents of a nine-year-old son. In 1997, the District Court entered a parental rights and responsibilities judgment that awarded sole parental rights and responsibilities to Richards and granted Thompson the right to unsupervised parent/child contact every weekend from 6:00 p.m. on Friday to 6:00 p.m. on Saturday.[1] The order gave Richards the responsibility to approve or disapprove of the weekend visits as follows:

> All visitation shall be subject to Plaintiff's approval. Defendant shall contact Plaintiff at least 48 hours prior to any scheduled visitation. Plaintiff shall approve or disapprove the visitation at that time. Plaintiff's prior approval shall not preclude denial of visitation at a later time for good cause.

[¶ 3] Thompson filed a motion for contempt on December 3, 2002, claiming that Richards violated the parental rights and responsibilities order. He alleged that Richards ignored all of his phone calls, failed to notify him when she moved and to provide him with her new phone number, failed to respond to his phone messages, and intentionally and willfully denied him visitation or contact with his son.

[¶ 4] The court held a hearing on the motion in February 2003, at which both Richards and Thompson testified. It found Richards had "spurned" Thompson's sporadic efforts to schedule visitation. In addition, the court found that in 2001 Richards obtained an order from the Cumberland County Probate Court (*Childs, J.*) changing the child's surname from Thompson to Richards without notice to Thompson and based on the false representation that Thompson had only minimal contact with the child when, in fact, Thompson was having relatively regular contact with the child. The court also found that Richards would permit Thompson's sister, the child's aunt, to see the child only if the sister agreed to not allow the child to see Thompson. The court's findings also noted that Richards had twice previously been found in contempt, and on both occasions the court had made "clear findings that the Plaintiff was in contempt for 'intentionally and willfully violating the Court's order permitting visitation.'" The court concluded that Richards had "engaged in a clear and deliberate course of conduct designed to deny access to the child by [Thompson] and his family, and ultimately to completely alienate the child from [Thompson]."

[¶ 5] Having found Richards in contempt, the court explained that the modification of the parties' parental rights and responsibilities was necessary:

> The more traditional contempt/purge approach was attempted by the Court in its Order of December 15, 1998 and clearly that failed. In order to remedy this situation, the Court is therefore going to enter into a more structured supervision of this case in order to ensure that the child's best interests, which obviously include contact with his father, be met.

The court modified parental rights and responsibilities by granting Thompson additional parent/child contact every other Sunday with the Home to Home Program [2]

---

1. This right was conditioned on Thompson not consuming alcohol and being present during the entire twenty-four-hour period.

2. Home to Home is a nonprofit corporation that eliminates confrontations between parents when they exchange their children for visitation by providing a safe and neutral atmosphere for the exchanges.

designated to supervise the exchange of the child; terminating Richard's right and responsibility to approve or disapprove Thompson's weekend visits in advance; and scheduling a review hearing to be held approximately four months from the date of the order. The order also provided that "in addition to the remedial sanctions outlined above, the Court reserves decision on further punishment."

## II. DISCUSSION

■ [¶ 6] Richards does not challenge the court's findings as clearly erroneous, but contends that the findings do not support a finding of contempt by clear and convincing evidence. M.R. Civ. P. 66(d)(2)(D).[3] She also contends that the court abused its discretion by finding her in contempt, modifying the parties' parental rights and responsibilities, and reserving the possibility of imposing further punitive sanctions against her.[4]

### A. The Contempt Finding

■ [¶ 7] Richards asserts that her failure to communicate with Thompson in response to his efforts to schedule weekend visits does not constitute clear and convincing evidence of contempt because she had been awarded sole parental rights and responsibilities and had, in her words, "absolute discretion to disapprove visitation at any time."

[¶ 8] An award of sole parental rights and responsibilities grants to a parent "exclusive parental rights and responsibilities with respect to all aspects of a child's welfare, with the possible exception of the right and responsibility for support." 19–A M.R.S.A. § 1501(6) (1998). It does not grant a parent absolute discretion, however, in connection with other provisions of the court's order pertaining to the child. Here, the court granted Thompson the right of parent/child contact. Implicit in every court order establishing parental rights and responsibilities is each parent's duty to refrain from unreasonably interfering with the rights of the other parent. Richards's discretion to approve or disapprove weekend visits was necessarily tempered by her responsibility to not unreasonably interfere with Thompson's right to parent/child contact.

■ [¶ 9] The 1997 judgment expressly recognized that Richards might disapprove of a visit for "good cause." Richards, however, does not assert the existence of good cause that would justify her wholesale failure to communicate with Thompson during the year prior to the filing of his motion for contempt. The court found that Richards had "spurned" Thompson's sporadic efforts to schedule visits. Thompson testified that as of the date of his motion for contempt, he had not seen his son for more than fourteen months, that he had called Richards approximately forty to fifty times in 2002, and that Richards had never answered his calls or responded to his recorded messages. The court also properly took notice of the fact that Richards had twice previously been found in contempt of the order. Under these circumstances, the court did not err or otherwise commit an abuse of discretion in finding Richards

---

3. Rule 66(d)(2)(D) provides:
   In order to make a finding of contempt, the court must find by clear and convincing evidence that:
   (i) the alleged contemnor has failed or refused to perform an act required or continues to do an act prohibited by a court order, and

(ii) it is within the alleged contemnor's power to perform the act required or cease performance of the act prohibited.

4. We review a judgment of civil contempt for an abuse of discretion. *Ames v. Ames*, 2003 ME 60, ¶ 22, 822 A.2d 1201, 1207.

in contempt by clear and convincing evidence. *See Pratt v. Spaulding,* 2003 ME 56, ¶¶ 12–13, 822 A.2d 1183, 1187.

■ [¶ 10] Richards also asserts that the court erred by basing its finding of contempt, at least in part, on its finding that she obtained a court order changing the child's surname from Thompson to Richards without notifying Thompson of her petition. However, the court's order expressly recognized that Richards was arguably acting within her rights in obtaining the name change. The reason why the court addressed Richards's changing of the child's surname is because it found that Richards had mischaracterized in her petition to the Probate Court the extent of Thompson's involvement with his son at that time. The court acted well within its discretion in considering this evidence as bearing on Richards's credibility and her willingness to respect the parental rights afforded Thompson.

B. Modification of Parental Rights and Responsibilities as Part of the Contempt Order

■ [¶ 11] Richards contends that absent a separate motion to modify the 1997 order, the court exceeded its discretion to impose remedial sanctions for contempt by modifying the parties' parental rights and responsibilities. However, both the civil rules and Title 19–A recognize the authority of a court to modify a prior order of parental rights and responsibilities upon a finding of contempt. Rule 66(d)(3) recognizes that in addition to coercive imprisonment, a coercive fine, and a compensatory fine, a court may also "order such additional relief as has heretofore been deemed appropriate to facilitate enforcement of orders, such as appointment of a master or receiver or requirement of a detailed plan or other appropriate relief." M.R. Civ. P. 66(d)(3). In addition, 19–A M.R.S.A.

§ 1653(7)(A), (B) (1998), recognizes that upon a finding that a parent is in contempt of an order concerning parental rights and responsibilities, it may "[r]equire additional or more specific terms and conditions consistent with the order [and order] that additional visitation be provided for a parent to take the place of visitation that was wrongfully denied."

[¶ 12] The court explained, as a predicate to modifying the parties' parental rights and responsibilities, that "[t]he more traditional contempt/purge approach" was previously attempted to achieve compliance by Richards and had failed, and that an order providing a "more structured supervision" of visitation was required. Accordingly, the court acted within its discretion by modifying the parties' parental rights and responsibilities for the purpose of giving effect to those rights and responsibilities, and by conferring additional parent/child contact to Thompson in view of the lengthy period during which he had been wrongfully deprived of contact with his son.

C. Reservation of Additional Punitive Sanctions

■ [¶ 13] Richards contends that the court erred when it expressly reserved for decision the possibility of "further punishment" in addition to the remedial sanctions set forth in its order.

[¶ 14] Rule 66(d)(2)(F) provides that "[i]n the event that the court makes a finding of contempt, the court shall issue an order which specifies the sanction to be imposed." The specification of the sanction imposed by a contempt order assures that parties understand the precise consequences flowing from the finding of contempt and what is required of the contemnor to purge her or himself of further contempt. The generalized and open-ended threat of "further punishment" in the

contempt order in this case accomplishes neither of these goals and is contrary to the rule's requirement of specificity.

The entry is:

That portion of the court's judgment, dated February 19, 2003, referring to "further punishment," is vacated, and the judgment is modified accordingly. As modified, the judgment is affirmed.