2006 ME 132

**Sandra A. HOGAN**

v.

**Daniel A. VENO.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Sept. 14, 2006.
Decided: Nov. 16, 2006.

Sandra A. Hogan, Lisbon, for plaintiff.

Donald S. Hornblower, Esq., Hornblower Lynch Rabasco & Van Dyke, P.A., Lewiston, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] Daniel A. Veno appeals from a judgment of the District Court (Lewiston, *Gunther, J.*) finding Sandra A. Hogan in contempt for violating a parental rights and responsibilities judgment by interfering with his right to parent/child contact with the parties' daughter, now age twelve. Veno contends that the contempt order that modified the earlier judgment improperly discontinued counseling requirements that were intended to reunite Veno and his daughter, and impermissibly limited Veno's right to parent/child contact with the daughter to two, one-hour visits per year. Because we conclude that the court acted outside the bounds of its discretion in determining the remedy for contempt, we affirm the contempt findings, but vacate a portion of the contempt relief and remand for additional proceedings.

## I. BACKGROUND

[¶ 2] Hogan and Veno are the parents of a twelve-year-old daughter born in December 1993. They separated in 1994 and Veno had regular visits with the daughter from then until May 2001 when Hogan accused Veno of sexually abusing the daughter. Veno has had no direct, non-therapeutic related visits with his daughter since then. The issues presented on appeal require an understanding of the history of this dispute beginning with (1) the initial judgment entered in September 2002, establishing the parties' parental rights and responsibilities; as well as, (2) the post–2002 proceedings and, in particular, the evidence presented at the two-day contempt and modification hearing conducted in 2005; (3) the findings in connection with the January 2006 contempt order that is the subject of this appeal; and finally, (4) the contempt relief ordered by the court in the January 2006 order.

### A. The 2002 Parental Rights and Responsibilities Judgment

[¶ 3] Hogan filed a parental rights and responsibilities complaint in 2001 and, after a contested trial, the court (*Cote, J.*) entered judgment in September 2002. The court found that the daughter, who has type I diabetes, had always lived with Hogan; that Veno had regular contact with the daughter from the time he and Hogan separated in 1994 until May 2001; and that beginning in May 2001 Hogan refused to permit Veno to have contact with their daughter because she believed Veno had sexually abused the daughter by touching her genital area over her clothes while he was tickling her.

[¶ 4] The court concluded that Veno had not sexually abused the daughter as alleged by Hogan, citing the results of two independent psychological evaluations of Veno, a psychological evaluation of the child, and the findings of the court-appointed guardian ad litem.[1] The court also

---

1. The hearing record included the results of a comprehensive evaluation prepared by the

Spurwink Child Abuse Program, which found "no evidence that Mr. Veno has been abusive

concluded that as a result of improper influence by Hogan, the child did not wish to have any contact with Veno:

> The Court also agrees with the Spurwink Child Abuse Center's assessment that the relationship between [the child] and [Hogan] is such that they are psychologically enmeshed, so that neither one of them is able to view the other as [a] separate person with separate needs. [The child's] expressed preference not to have any contact with [Veno] is likely the result of conscious or sub-conscious influence by [Hogan] and an adoption by [the child] of [her mother's] view of [Veno], rather than a reaction to [Veno's] treatment of [her]. The nature of the relationship between [Hogan] and [the child], combined with [Hogan's] clear disdain of [Veno], is extremely troubling to the Court, as it is clear that alienation of [the child] from [Veno] has been the result.
>
> The Court finds that it is in [the child's] best interest to have a meaningful relationship with [her father]. However, the Court recognizes that, although it may be in [the child's] best interest in the long-term to immediately restore contact with [Veno] outside of a therapeutic setting, it would be devastating to [the child] in the short-term.

[¶ 5] The court allocated parental rights and responsibilities, with the daughter to reside solely with Hogan, and Veno to have the right to be fully informed of and comment on all significant decisions affecting the child and to have unrestricted access to the professionals involved in the child's care. The judgment did not allocate specific rights of parent/child contact to Veno. Rather, the court ordered the parties to obtain individual counseling for themselves and for their daughter to address the issues noted in the reports of the guardian ad litem and the Spurwink Child Abuse Program, as well as joint counseling for Veno and the daughter (without Hogan's participation) to reestablish their relationship. The judgment stated that the various counseling efforts should be focused on reestablishing contact between the daughter and Veno:

> The Court strongly encourages that all counseling be obtained from a center that can have overall responsibility for this case with a team that works with the family members and meets on a regular basis, remain ideally unaligned with either parent, and focused on reestablishing contact between [the daughter and Veno].

The judgment also provided that "[e]nrollment and significant progress in the counseling ... or the failure to seek or cooperate in such counseling, shall be deemed a substantial change of circumstances warranting reconsideration of this award of parental rights and responsibilities."

### B. The Post–2002 Proceedings

[¶ 6] Veno filed a motion for contempt in May 2004, alleging, inter alia, that Hogan had not complied with the judgment's counseling requirements.[2] After a hearing, the court (*Goranites, J.*) entered an order in July 2004 that partially decided

---

in any way towards his daughter"; that the child's "perceptions of her father are so far beyond his actual behavior towards her that they must be a reflection of some outside influence"; and that "Hogan's ability to influence [the daughter]" was potentially abusive towards the child because the "destruction of a potential relationship with the biological father, with whom, by many reports, [the child] had a warm relationship prior to the events of the past year, can only further serve to confuse and potentially damage [the child] psychologically and emotionally."

**2.** Hogan filed a prior motion for contempt in July 2003 but withdrew it in September.

the motion, finding that Hogan had violated the judgment by not providing certain information to Veno regarding the child's medical care and schooling and by failing to obtain counseling for herself. The court ordered Hogan to obtain counseling. With respect to the daughter's individual counseling and her reunification counseling with Veno, the court ruled that the record was inadequate to decide the issue and that a further hearing, with appropriate expert testimony, was necessary. Both parents subsequently filed motions to modify the September 2002 judgment.

[¶ 7] More than a year later, the court (*Gunther, J.*) held an evidentiary hearing on the motion for contempt and the motions to modify over two days in November 2005. The child's former counselor testified that she had met with the child for nine sessions beginning in September 2003 and concluding in March 2004. Hogan attended eight of the sessions. The daughter was adamant that she did not want to see Veno, and the counselor testified that she should not have raised the topic of the father so soon in the process. The counselor terminated the counseling with the daughter after only nine sessions because, in her view, the daughter was too enmeshed with Hogan for effective counseling at that point, and because the daughter had learned distorted information about Veno from Hogan, including Hogan's insistence, contrary to the court's 2002 judgment, that Veno had molested the daughter. The counselor testified that at the time her work with the daughter ended, the daughter was in the latency stage of development, where it was natural for the daughter to be aligned with, and have difficulty separating from, her mother. The counselor noted that she then believed that the counseling should be reinitiated when the daughter enters adolescence and would be more likely to separate from her mother. She commented:

"I'm hoping that the natural biological clock that's inside people is going to assist her in accepting that she can have two parents," and that the counseling might resume when "she's twelve, thirteen, fourteen, as she's beginning to get into the natural desire to separate from Mom, and it wouldn't be as horrific for her."

[¶ 8] Veno testified that he had complied with the 2002 judgment by getting counseling for himself, that he loves his daughter, and that he wants to reestablish the good relationship he believes they had before Hogan broke contact between them in 2001. Veno stated that he had been actively involved in his daughter's diabetes care prior to 2001, and since then he had stayed informed and participated in some training for parents of children with diabetes. He explained that he had repeatedly attempted to initiate joint counseling with his daughter as ordered by the court in 2002, but had been thwarted by Hogan. Veno's counselor similarly testified that she had attempted to help Veno initiate joint counseling with the daughter by contacting Hogan, but Hogan had angrily refused.

[¶ 9] The guardian ad litem, who, in preparation for her final August 2005 report, twice interviewed the daughter as well as Hogan, testified that the biggest problem in the child's life is Hogan's significant parenting deficit regarding the daughter's relationship with Veno, a problem that has gotten worse since the 2002 judgment. Specifically, the guardian ad litem testified that Hogan had failed to accept that her view of reality is inaccurate and she failed to address her own issues regarding the daughter's relationship with Veno. The guardian ad litem testified that it is in the daughter's interest that Hogan be given more time to comply with the court's order, but if she still "won't get it" there should be specific and serious conse-

quences; that Hogan's attitude needs to change because her behavior prevents the daughter from having a healthy relationship with both parents; and that since the 2002 judgment, Hogan has attempted to do a "Dadectomy" by excluding Veno from the daughter's life, at a great price to the daughter. In her final written report to the court, the guardian ad litem concluded: "It is essential for [the daughter's] best interests that Ms. Hogan come to understand the nature of the emotional abuse she is inflicting on [the daughter] by implementing the strategy designed to alienate [the daughter] from her father."

[¶ 10] Hogan testified to her belief that the problem rests not with her, but with the fact that Veno had molested and traumatized their daughter, and that the daughter was resistant to reunifying with Veno because of the counseling mandated by the court. Hogan testified that when the daughter's initial counseling ended in March 2004, she understood that it was the counselor's opinion that the daughter should not see Veno again until she was eighteen years old and could decide on her own whether she wished to see him. As a result, and contrary to the 2002 judgment, she had enrolled the daughter in counseling for sex abuse, not for reunification with Veno.[3] Hogan also explained the extraordinary care she was required to provide as a result of the daughter's diabetes. She also testified that she had not worked on issues of alienation and enmeshment in her own counseling because her counselor did not believe she had those issues.

[¶ 11] Hogan's counselor testified that she was treating Hogan for an anxiety disorder that was associated with the stress Hogan was experiencing from the court proceedings. She explained that she had not counseled Hogan for enmeshment issues as had been recommended in the

guardian ad litem and Spurwink reports cited in the 2002 judgment because both she and Hogan did not believe that Hogan and the daughter were enmeshed. Hogan also presented the testimony of a friend and former neighbor who testified that Hogan was a loving and dedicated parent.

## C. The Contempt Findings

[¶ 12] At the conclusion of the hearing, the court explained its findings and found Hogan in contempt for violating the 2002 judgment. The court subsequently issued detailed written findings and concluded that Hogan was in contempt for failing to comply with the provisions of the 2002 judgment that required her to: (1) obtain individual counseling for herself to address her enmeshment with the daughter and her alienation of the daughter from Veno; (2) obtain counseling for the daughter through the Spurwink Child Abuse Program or with a counselor recommended by Spurwink that addressed the issues of enmeshment and alienation; and (3) cooperate in the initiation of joint counseling between Veno and the daughter to reestablish their relationship.

[¶ 13] The court's decision made reference to the child's former counselor's testimony recommending that the child resume counseling with her progression from the latency stage to the adolescent stage of child development, stating that the child's counselor recommended "further counseling when [the child] was older, when biological imperatives tend to create conflict between adolescent[ ] girls and their mothers." The court's decision then set forth two findings that were directly related to the contempt remedy that followed, the first of which appears contradictory to the counselor's recommendations regarding further counseling. The court found:

---

**3.** The counselor providing the sexual abuse     counseling did not testify at the hearing.

[The counselor] concluded that forced counseling for [the child] with and about her father would be dangerous for [the child's] emotional health. Ordering compliance with the earlier order or a similar substitute (Recommendation 5 from the Guardian) is too risky. Another option must be provided.

Despite her diabetes, [the child] can work through stressful situations without untoward physical risk. She can probably withstand meetings with her father in public places with her mother nearby.[ ] Ms. Hogan may purge [her contempt], in part, by providing meetings as an alternative to different counseling.

## D. The Contempt Remedies

[¶ 14] The court entered a separate order, subsequently corrected by an order dated January 4, 2006, containing its contempt sanction and modification relief. The court sentenced Hogan to thirty days in jail, but stayed the sentence to allow her to purge her contempt by complying with three requirements that were to apply "during the balance of [the child's] minority." The first requirement provided for Hogan to select one of two alternatives that she and Veno would then be bound by, and the court noted in a footnote that Hogan had already selected the second alternative:

1(a). [The child] is to be enrolled in counseling with her father as recom-

mended in the Guardian's report of August 16, 2005, paragraph 5.

OR

1(b). [Hogan] is to bring [the child] for a meeting with her father two times per year for one hour each session. The meetings are to be on the third Sunday of December and on Father's Day. The first meeting is to occur on December 18, 2005, at 2:00 p.m. at the Auburn Mall. The parties are to meet in the Food Court. [Hogan] may be in the vicinity, but should let [the child] and Mr. Veno sit at a neighboring table. At Mr. Veno's election, they may proceed elsewhere in the mall with Ms. Hogan along, but not necessarily a part of the interaction. Mr. Veno may bring other members of his/[the child's] family if he chooses.

Subsequent meetings may be held at the Auburn Mall or, in Mr. Veno's election, they may be scheduled for another public place such as a restaurant, bowling alley, beach (provided that there is a lifeguard on site), or similar facility. If the meeting place is not to be at the Auburn Mall, he is to notify Ms. Hogan at least two weeks in advance.

[¶ 15] Paragraph 1(a) of the court's order refers to and adopts paragraph 5 of the guardian ad litem's recommendations. The guardian ad litem had recommended an intensive counseling regimen intended to reunite the daughter with Veno that would be subject to the court's continued supervision and review.[4]

---

**4.** The guardian ad litem recommended:

In keeping with my duty to recommend to the parties and the Court outcomes that will meet [the child's] best interest, I recommend the following:

1) Sandra and Dan should continue to share parental rights for [the child];
2) [The child] should continue to live primarily with Sandra;
3) Sandra should immediately initiate therapy with an individual therapist, with the goals of this therapy to include:
   a) Sandra separating from [the child] emotionally, particularly relating to all aspects of her relationship with Dan;
   b) Sandra recognizing her behavior re: Dan and [the child] as alienation;

[¶ 16] The court also ordered: Hogan and Veno to have monthly, face-to-face meetings to exchange information and discuss their daughter's education, health, and counseling; Hogan to provide Veno a release that would enable him to communicate directly with the daughter's sexual abuse counselor, and to provide the counselor with copies of the guardian ad litem's reports and the court's orders; and Veno to have the right, by a specified date, to unilaterally terminate the daughter's sexual abuse counseling, subject to Hogan's right to have the court decide whether the counseling should continue.[5] Hogan was also ordered to pay $5000 toward Veno's attorney fees, payable in part by a set-off from child support, and the court modified the 2002 parental rights order to delete the requirements of joint counseling and individual counseling for Veno.

## II. ANALYSIS

[¶ 17] Veno challenges various aspects of the court's fact-finding and asserts that the remedy adopted by the court was an abuse of discretion because it, in effect, rewarded Hogan's contempt. Specifically, Veno asserts that although the court found Hogan in contempt for persistently refusing over a period of two-and-a-half years to comply with the 2002 judgment's requirements that she obtain and cooperate with counseling intended to reestablish the father/daughter relationship, the court then declined to enforce that judgment and instead granted Hogan the discretion to effectively terminate any effort to reunite Veno and the daughter through counseling

c) Increasing Sandra's understanding of the negative impacts of her alienation campaign on [the child];

d) Helping Sandra cease the alienation and develop a more neutral or even a positive attitude regarding Dan's role in [the child's] life;

e) Assisting Sandra in devising appropriate back-up caregiver plans for [the child]. This therapy should include weekly or even twice weekly sessions. The therapist should be charged with providing written monthly progress reports to the Court.

4) Should Sandra fail to make adequate progress in her individual therapy by June of 2006, primary residence of [the child] should be given to Daniel.

5) That the Court measure Sandra's progress in individual counseling by her cooperation and collaboration with implementing co-joint therapy for [the child] and Daniel with Phoebe Prosky, LCSW no later than February 2006. Ms. Prosky may meet separately with Dan and [the child] before February, but co-joint sessions must be underway by the end of February 2006. Ms. Prosky shall be responsible for devising a treatment plan, with input from Dan and [the child], and Sandra shall be responsible for making [the child] available for all appointments with Ms. Prosky.

6) That the Court should schedule this matter for a status conference/[pre]-trial conference in early April 2006.

5. The court found that (1) the sexual abuse counseling "was instituted without notice to [Veno], and is in violation of the order of shared parental rights, but it may be better than no counseling or an unknown alternative"; (2) even if the counseling is based on a false premise, it is likely to address the daughter's enmeshment with Hogan because "[e]nmeshment has been obvious to everyone who looks at her, and it is probably also apparent to [the counselor]"; and (3) "[t]he counseling for 'abuse' must, to be effective, address [the daughter's] ... relationships with males as friends and partners." As Hogan contends, these latter two findings are not supported by record evidence because the counselor did not testify and there was no other evidence regarding the scope of the counseling or the professional experience of the individual providing the counseling other than that she is a licensed clinical social worker; the guardian ad litem had no information regarding the counseling because Hogan did not inform her of it prior to the hearing; and Hogan testified that the only feedback she had received from the counselor was "something like, 'What counsel is going to let [the daughter] see [Veno] after what he had done?' "

and reduce Veno's parental rights to no more than two, one-hour visits per year. Veno contends that the order should be revised so as to divest Hogan of the discretion awarded to her, and to fully implement the recommendations of the guardian ad litem.

## A. Standard Governing Contempt Remedy

■ [¶ 18] Upon a finding of contempt in a proceeding seeking a remedial sanction, the court has the discretion to impose one or more of the types of sanctions identified in M.R. Civ. P. 66(d)(3) including, but not limited to, the appointment of a master or receiver, the adoption of a detailed plan or other form of relief such as coercive imprisonment, a coercive fine, or a compensatory fine.[6] We review a court's findings made in connection with its remedial order for clear error, and we review the remedies themselves for an abuse of discretion. *Wrenn v. Lewis,* 2003 ME 29, ¶ 13, 818 A.2d 1005, 1009.

[2] [¶ 19] A court is invested with broad discretion to craft an appropriate remedy in cases where one parent's violations of a prior judgment of parental rights and responsibilities have the effect of alienating a child from the other parent. In *Richards v. Thompson,* 2004 ME 25, ¶¶ 5, 12, 842 A.2d 1289, 1291–92, 1293, we affirmed a court's contempt order that modified a prior judgment by imposing, in its words, "more structured supervision" of the family by (1) adopting a specific visitation schedule with a designated supervisor for the parents' exchange of the child; (2) terminating the mother's right under the original judgment to approve the father's weekend visits in advance; and (3) scheduling a review hearing four months from the date of the order.

■ [¶ 20] We recognized in *Richards* that both M.R. Civ. P. 66(d)(3) and 19–A M.R.S. § 1653(7)(A), (B) (2005)[7] provide

---

6. The rule provides:

> (3) *Remedial Sanctions.* The court may impose any of the following sanctions on a person adjudged to be in contempt in a proceeding seeking remedial sanctions. The court may also order such additional relief as has heretofore been deemed appropriate to facilitate enforcement of orders, such as appointment of a master or receiver or requirement of a detailed plan or other appropriate relief. An order containing a remedial sanction shall contain a clear description of the action that is required for the contemnor to purge the contempt.
>
> (A) Coercive Imprisonment. A person adjudged to be in contempt may be committed to the county jail until such person performs the affirmative act required by the court's order.
>
> (B) Coercive Fine. A person adjudged to be in contempt may be assessed a fine in a specific amount, to be paid: (i) unless such person performs an affirmative act required by the court's order; or (ii) for each day that such person fails to perform such affirmative act or continues to do an act prohibited by the court's order.

> (C) Compensatory Fine. In addition to, or as an alternative to, sanctions imposed under subparagraph (A) or (B) of this paragraph, if loss or injury to a party in an action or proceeding has been caused by the contempt, the court may enter judgment in favor of the person aggrieved for a sum of money sufficient to indemnify the aggrieved party and to satisfy the costs and disbursements, including reasonable attorney fees, of the aggrieved party.

M.R. Civ. P. 66(d)(3).

7. Title 19–A M.R.S. § 1653(7)(A) and (B) (2005) state:

> 7. Violation of order concerning parental rights and responsibilities and contact. Either parent may petition the court for a hearing on the issue of noncompliance with the order issued under subsection 2. If the court finds that a parent has violated a part of the order, the court may find that parent in contempt and may:
>
> A. Require additional or more specific terms and conditions consistent with the order;

that upon a finding of contempt, the court may require additional or more specific terms and conditions regarding parental rights and responsibilities. 2004 ME 25, ¶ 11, 842 A.2d at 1293; *see also Pratt v. Spaulding,* 2003 ME 56, ¶ 14, 822 A.2d 1183, 1187 (noting that it was obviously against the best interest of the child for one parent to interfere with the child's relationship with the other parent, and affirming the trial court's order expanding the noncustodial parent's visitation rights); *Cloutier v. Lear,* 1997 ME 35, ¶ 7, 691 A.2d 660, 662 (concluding that the trial court acted within the bounds of its discretion in modifying the children's primary residence where the residential parent had denigrated the other parent to the children and had frustrated the children's contact and communication with the other parent). However, in crafting a modification of a judgment of parental rights and responsibilities as a remedial contempt sanction where one parent has interfered with the other parent's relationship with the child, the purpose of the modification should neither be to punish the contemptuous parent nor reward the non-contemptuous parent. Rather, the touchstone for the court's exercise of discretion when crafting remedial contempt relief is to advance the best interest of the child who is the subject of the proceeding. *See Huff v. Huff,* 444 A.2d 396, 398 (Me.1982) (concluding that the trial court improperly used its custody award to one parent as a sanction for the contempt of the other parent and, in so doing, failed to first determine that a change in custody was in the child's best interest). When determining a child's best interest, a court is not simply "adjudicating a controversy between adversary parties, to compose their private differences"; it must instead act as would a "wise, affec-

tionate and careful parent and make provision for the child accordingly." *Ziehm v. Ziehm,* 433 A.2d 725, 728 (Me.1981) (quoting *Finlay v. Finlay,* 240 N.Y. 429, 148 N.E. 624, 626 (1925) (Cardozo, J.) (quotation marks omitted)).

## B. The Contempt Remedy in This Case

[¶ 21] The contempt remedy in this case includes modification relief, coercive imprisonment, and a compensatory fine in the form of an award of attorney fees. Because neither party challenges the attorney fees Hogan was ordered to pay Veno, we only address the first two types of relief.

### 1. Modification Relief

[¶ 22] The court found that Hogan had committed serious violations of the provisions of the 2002 judgment that were intended to reunite the daughter with Veno. With this history, the court's decision to grant Hogan the discretion to choose between two alternatives—intensive counseling designed to reunite Veno and his daughter as recommended by the guardian ad litem, or two annual one-hour visits between Veno and his daughter— cannot be reconciled from the perspective of the daughter's best interest. If, as the court found, it will be in the daughter's best interest for her mother to cooperate with implementing joint counseling for the daughter and Veno as recommended in paragraph 5 of the guardian ad litem's report, it cannot also be in the daughter's best interest for there to be no effort at reunification counseling and for the daughter's contact with Veno to be restricted to two one-hour visits per year at a shopping mall. The court did not find, nor can we

B. Order that additional visitation be provided for a parent to take the place of

visitation that was wrongfully denied.

infer that it could have found on this record, that each of these remedies is in the best interest of the daughter only if implemented to the exclusion of the other. The adoption of alternative, mutually exclusive remedies appears instead to be based on an assessment that Hogan will ultimately control what happens in this case regardless of what the court might order.

[¶ 23] The court's decision to order reunification counseling as recommended by the guardian ad litem as one of the two alternative dispositions was also in opposition to its finding that, based on the testimony of the child's former counselor, "forced counseling for [the child] with and about her father would be dangerous for [the child's] emotional health [and that o]rdering compliance with the earlier order or a similar substitute is too risky." This finding is clearly erroneous because the counselor testified that counseling for the child with and about her father would be appropriate for the child once she left the latency phase and entered the adolescent phase of child development. The former counselor's work with the daughter began when the daughter was nine years old and concluded when the daughter was ten years old. As of the court's January 2006 corrected order, the child was twelve years old, which is generally viewed as the onset of adolescence.[8] The modification relief ordered by the court to apply during the balance of the child's minority failed to fully account for the child's age and the dynamic nature of child development, which are important aspects of the best interest factors set forth in 19-A M.R.S. § 1653(3) (2005).

[¶ 24] In addition, the contempt order ceded the final decision for the contempt

remedy to Hogan, a parent who rejected the court's 2002 fact-finding and best interest determination, and who opposed any effort to reestablish Veno's relationship with his daughter. Given the court's 2005 findings, it was a certainty that Hogan would select the alternative of two, one-hour visits because that alternative would preclude any further concerted effort to reestablish the daughter's relationship with Veno. Not surprisingly, when the court explained at the conclusion of the hearing that its order would permit Hogan to choose between the two alternatives, Hogan spontaneously expressed her preference for the two-visits-per-year option.

[¶ 25] The contempt remedy empowered Hogan, the contemnor, to select a path that will enable her to hold fast to her conviction that Veno should have no relationship with his daughter. This approach exceeds the bounds of the court's discretion because it fails to account for "[t]he capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access," 19-A M.R.S. § 1653(3)(H) (2005), and fails to heed the admonition that " 'no court should attempt to accommodate any continuing animosity of the parents.' " *Cloutier*, 1997 ME 35, ¶ 8, 691 A.2d at 663 (quoting *Sheldon v. Sheldon*, 423 A.2d 943, 946 (Me.1980)).

2. Coercive Imprisonment

[¶ 26] Courts have long employed coercive imprisonment through an actual or suspended period of jail as a means to compel a party to honor judicial decrees. The suspended thirty-day jail sentence ordered by the court here was well within its authority. Nonetheless, we conclude the

---

**8.** "Traditionally, adolescence comprises ages 10–21 and is divided into early (ages 10–14), middle (14–18) and late (19–21) adolescent periods." NATIONAL COUNCIL OF JUVE-NILE AND FAMILY COURT JUDGES, CHILD DEVELOPMENT: A JUDGE'S REFERENCE GUIDE 16 (1993).

court exceeded the scope of its discretion by ordering a period of coercive imprisonment in a manner in which the contemnor was assured that she would never actually experience the coercive effect intended by the remedy.

[¶ 27] At the conclusion of the hearing, the court expressed its opinion that based on the judge's own experience, there was nothing it could do to change Hogan and that it would accept Hogan as she is. This premise fails to account for the fact that Hogan had never been subjected to the threat of coercive imprisonment during the years that she had refused to comply with the 2002 judgment. Without the history of a party's prior failure to respond to the threat or imposition of coercive imprisonment or an expert opinion that a party's psychological make-up renders her immune to the effects of a coercive remedy, the finding that Hogan will never respond to the same rests on nothing more than conjecture. Moreover, by informing Hogan that the court did not expect her to change, and then ordering relief that enables Hogan to avoid any change, the court's use of coercive imprisonment as a contempt remedy was rendered a nullity.

## III. CONCLUSION

[¶ 28] We affirm the court's finding of contempt, and its imposition of coercive imprisonment and award of attorney fees, but vacate paragraphs 1(a), 1(b), 2, and 3 of its remedial order, and remand this matter to the District Court for it to enter a new remedial order that (1) is consistent with the guardian ad litem's recommendations as set forth on page 8 of the guardian's August 16, 2005, report, and that compels Hogan to comply with the same; and (2) permits Veno immediate rights of limited parent/child contact. On remand, the court must reconsider how to effectuate the contacts consistent with the best interest of the child, and whether the contacts should occur under the supervision of a neutral person such as a counselor, a neutral visitation supervisor, the guardian ad litem, or a neutral and trusted family member or friend.

The entry is:

The corrected order dated January 4, 2006, is affirmed in part and vacated in part. Case remanded for further proceedings consistent with this opinion.