In re the MARRIAGE OF Bruce Owen
BECKMAN, Appellant,

and

Karen HOLM, Appellee.

No. 88CA0966.

Colorado Court of Appeals,
Div. I.

Oct. 25, 1990.

Eckelberger and Feldman, Ethan D. Feldman, Englewood, for appellant.

Cox, Mustain–Wood and Barbieri, Randall C. Mustain–Wood, Littleton, for appellee.

Opinion by Judge METZGER.

In this dissolution of marriage action, the husband appeals from portions of the judgment relating to maintenance and property division and from a finding regarding the length of the marriage. We affirm in part, reverse in part, and remand for further proceedings.

The parties began living together in 1973 and were later ceremonially married on July 1, 1977. Although the parties separated in December 1981, the petition for dissolution was not filed until September 1986. A decree of dissolution was entered in November 1987. At that time, the husband was approximately 38 years old and the wife was 40 years old.

In his petition, the husband requested that no maintenance be awarded to either party; the wife did not file a response as permitted by § 14–10–107(4)(a), C.R.S. (1987 Repl.Vol. 6B). The trial court conducted an evidentiary hearing on permanent orders in November 1987, and later considered supplemental briefs on the issue of the husband's military pension. Thereafter, determining that a further hearing was unnecessary, the court entered additional findings and orders.

It is undisputed that, at the time of the decree, the husband's military pension through the Colorado National Guard had not vested since he had not completed 20 years of military service; he was required to serve approximately three more years. However, the husband testified that he intended to complete the service time necessary for vesting of his military pension.

The trial court found that the "inception of the marriage" occurred in 1973, thus implicitly determining that a common law marriage existed. It ordered the husband to pay the wife $10,000 as an adjustment of the otherwise stipulated property division, $2,000 towards the wife's attorney's fees, and $100 per month maintenance until her death, remarriage, or further order of the court.

The court further determined that it would be "inequitable to conclude that a pension which has not vested in the full sense of the word because the full term of service has not been completed is not marital property." Therefore, it expressly extended the rationale of *In re Marriage of Grubb*, 745 P.2d 661 (Colo.1987), and determined that the husband's unvested and unmatured military pension through the Colorado National Guard was marital property, and entered a percentage order of distribution using the reserve jurisdiction method.

I.

■ First, the husband contends that the court erred in treating the marriage as having begun in 1973 because the theory of a common law marriage was neither pled, argued, nor supported by the evidence. The wife responds that this issue was tried by the implied consent of the husband. We agree with the husband that the facts of this case do not support the trial court's implicit determination that a common law marriage existed.

The wife did not affirmatively seek determination of the existence of a common law marriage by way of any responsive pleading. Nor was such a request made in her opening statement, in her closing statement, or acknowledged in the preliminary discussions between counsel and the court which occurred immediately before trial. The wife's attorney, in opening statement, remarked that the parties "started a relationship in 1973." However, that comment, alone, is insufficient to frame the issue of a common law marriage for determination.

The argument of wife's counsel, that disclosure of the issue was made during settlement negotiations, cannot substitute for a proper record on appeal. *See Subsequent Injury Fund v. Gallegos*, 746 P.2d 71 (Colo.App.1987). And, a review of the record reveals that the wife's testimony, that the parties had "been in Colorado together since 1973," was given in response

to the jurisdictional question whether the parties had been domiciled in Colorado for 90 days before filing the petition for dissolution.

We are persuaded that the husband understandably would not know that the mere fact that the parties had cohabited before their formal marriage would later be made the basis of a theory that the parties had a common law marriage. *See American National Bank v. Etter*, 28 Colo.App. 511, 476 P.2d 287 (1970). This passing comment was insufficient to provide the basis for an implied or express consent of the parties to try the issue of the existence of a common law marriage. *See Dreiling Motor Co. v. Shultz*, 168 Colo. 59, 450 P.2d 70 (1969). Accordingly, we conclude that the trial court erred in determining that the parties were married at common law from 1973 to 1977.

## II.

For the same reasons, the husband also contends that the wife is not entitled to maintenance. He emphasizes that she requested only that the court retain jurisdiction over the issue of maintenance for future determination, if necessary. He also argues that the evidence does not support an award of maintenance. We disagree.

■ The record amply supports the wife's assertion that the issue of maintenance was tried by the implied or express consent of the parties. Consequently, we reject the husband's arguments to the contrary. *See Dreiling Motor Co. v. Shultz, supra.*

■ The trial court's determinations concerning the wife's inability to meet her necessary and reasonable expenses find support in the record, as do its findings of fact concerning the husband's ability to pay $100 per month. *See* § 14–10–114, C.R.S. (1987 Repl.Vol. 6B). Consequently, we will not disturb the maintenance award. *See In re Marriage of Olar*, 747 P.2d 676 (Colo. 1987).

## III.

■ Next, the husband asserts that the trial court erred in determining that his National Guard pension was marital property. He argues that, because his entitlement to this pension was unvested and unmatured, no asset capable of division existed. We disagree.

Although this issue is one of first impression in Colorado, it has been litigated extensively in other jurisdictions. G. Blumberg, "Intangible Assets Recognition and Valuation," 2 J.P. McCahey, ed., *Valuation & Distribution of Marital Property.* The majority of other courts have held that a spouse's interest in military retirement benefits is marital property to the extent that such rights accrued during the marriage, whether the interest is vested or not vested at the time of dissolution of the marriage. *See generally* Annot., "Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses," 94 A.L.R.3d 176 (1979).

The reasoning employed in these cases is as follows. Marital property, subject to division in a dissolution action, consists of that property acquired by either spouse during the marriage (with a few exceptions not pertinent to this analysis). Military retirement benefits are not a mere gratuity derived from an employer's beneficence; rather, they are a form of deferred compensation constituting consideration for past services performed by the employee. *See, e.g., In re Marriage of Fithian*, 10 Cal.3d 592, 517 P.2d 449, 111 Cal.Rptr. 369 (1974). Oftentimes, as here, a portion of the years necessary to qualify for these military pension benefits were years in which the parties were "partners in marriage." *Linson v. Linson*, 1 Haw.App. 272, 618 P.2d 748 (1980).

Whether the military pension is vested or unvested is immaterial, since its critical characteristic is the fact that it is based on an employee's efforts. As observed by the Idaho Supreme Court in *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979), regarding non-military pensions, a pension "is not

earned on the last day of the 20th year of employment."

This approach is based, to a great extent, on the equitable principle that substance should prevail over form. *Linson v. Linson, supra.* It also recognizes the economic reality that military pension benefits have become an increasingly significant part of the consideration earned by an employee. One court observed: "[A]s the date of vesting and retirement approaches, the value of the [military] pension right often becomes the most valuable asset of the marital community." *Linson v. Linson, supra.*

■ Any contingencies underlying the actual commencement of retirement should be taken into account, not when determining whether the military pension plan is properly includable in the marital estate, but rather, in selecting the methodology to be used in distributing that marital asset. *See Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981).

In *In re Marriage of Grubb, supra,* our supreme court held that a spouse's vested but unmatured interest in a private employer-sponsored pension plan constituted marital property. It reached the same result in *In re Marriage of Gallo,* 752 P.2d 47 (Colo. 1988), which involved a spouse's vested and matured interest in a military pension.

In both cases, the reasoning was identical to that we have just articulated, and the authorities we noted were cited with approval. Most of those cited cases determined that a non-vested military pension was marital property. Consequently, employing that same reasoning as applied to the facts of this case, we adopt the majority rule and hold that the husband's non-vested military retirement benefits here constitute marital property subject to division pursuant to § 14–10–113, C.R.S. (1987 Repl.Vol. 6B). Accordingly, the trial court was correct in denominating the husband's military pension here as such. However, we express no opinion whether this analysis applies to non-vested civilian pensions.

## IV.

■ The husband also asserts that, even if his unvested military pension is marital property, the trial court incorrectly divided it by using the reserve jurisdiction method. We disagree.

In valuing and dividing prospective pension rights, a trial court must consider the possibility that death or termination of employment may destroy those rights before they mature. One mechanism approved by our supreme court for dividing unmatured contingent payments is the reserve jurisdiction method. This approach allows the trial court to determine the division formula at the time of the decree, but to retain jurisdiction to distribute payment if, as, and when the contingent funds are received. *In re Marriage of Grubb, supra.* This method of division not only eliminates the difficulty of computing the present value of pension rights, but also, in cases of non-vested pensions, divides equally the risk that the pension will fail to vest. *See also In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976); *In re Marriage of Korper,* 131 Ill.App.3d. 753, 86 Ill.Dec. 766, 475 N.E.2d 1333 (1985).

We see no abuse of discretion in the trial court's selection of the reserve jurisdiction method in this case. That approach, in our view, fairly allocates the relative risks and benefits between the parties.

However, we agree with the husband that the trial court erred in failing to conduct a hearing concerning the valuation issue. The valuation of military pension benefits is particularly complex because these benefits are calculated in a unique manner.

> "The military benefit is based on points which are converted into years of service. Since the basis of years of credited service is points, the coverture fraction for military benefits must be determined in terms of points rather than years, as is normally the case. Use of a simple years of service computation rather than recognition of the point system will, in some situations lead to inequitable conclusions. The greatest potential for distortion of the marital share of the benefit occurs in situations where the member of the mili-

tary retirement system switches from regular component to reserve component service."

W. Troyan, "Procedures for Evaluating Retirement Entitlements Under Non–ERISA, Retirement Systems for Marriage Dissolution Actions," 3 J.P. McCahey, ed., *Valuation & Distribution of Marital Property* § 46.34(1) (1990).

We must remand this matter to the trial court for a hearing to redetermine the percentage applicable here, especially since the length of the marriage needs to be recalculated. Also, the court should consider whether the computation, determined under the reserve jurisdiction method, is more appropriately based on a point system rather than on a system based on years.

### IV.

Finally, the husband contends that the trial court erroneously awarded the wife a portion of the survivor benefits ancillary to his National Guard pension. Since the court's order of June 7, 1988, explicitly making this award was entered more than 60 days after the various posttrial motions it addressed, the order was void. *See Sandoval v. Trinidad Area Health Ass'n,* 752 P.2d 1062 (Colo.App. 1988). Thus, it is not enforceable against husband, and we will not consider it.

The portions of the judgment determining the length of the marriage and the distribution of the husband's pension are reversed. In all other respects, the judgment of February 12, 1988, *nunc pro tunc,* November 19, 1987, is affirmed. This matter is remanded to the trial court for further proceedings consistent with the views expressed herein.

PIERCE and REED, JJ., concur.