OPINION {¶ 1} Defendant-appellant, David G. Hasselback ("appellant"), appeals from the judgment entry of divorce issued by the Franklin County Court of Common Pleas, Division of Domestic Relations on July 13, 2006. *Page 2 
 {¶ 2} Appellant and plaintiff-appellee/cross-appellant, Nannie V. Hasselback ("appellee"), were married on May 15, 1974. Two children were born as issue of the marriage, both of whom are emancipated adults. The parties were separated in February 2003, and appellee filed a complaint for divorce in April 2003. An answer and counterclaim for divorce were filed by appellant. The trial in this matter was held over several days, including, June 8 and 11, 2004; April 20-21, 2005; and June 9, 2005. The marriage was formally terminated by order of the court on June 9, 2005. The parties submitted written closing arguments and supplemented the same upon the trial court's request in January 2006. A decision and judgment entry of divorce was filed July 13, 2006. This appeal followed. A limited remand was issued by this court to provide the trial court an opportunity to rule on appellee's motion for relief from judgment, which was denied on September 25, 2006.
 {¶ 3} On appeal, appellant brings the following six assignments of error for our review:
 [I.] THE COURT ABUSED ITS DISCRETION, AS A MATTER OF LAW, IN THE MANNER IN WHICH IT DIVIDED THE NATIONAL GUARD PENSION OF THE APPELLANT.
 [II.] THE COURT ABUSED ITS DISCRETION IN AWARDING SPOUSAL SUPPORT TO THE APPELLEE.
 [III.] THE COURT ABUSED ITS DISCRETION IN THE CALCULATION AND ALLOCATION OF ASSETS AND LIABILITIES.
 [IV.] THE COURT ABUSED ITS DISCRETION AWARDING THE PLAINTIFF-APPELLEE $30,000.00 IN ATTORNEY FEES. *Page 3 
 [V] THE COURT ABUSED ITS DISCRETION IN AWARDING THE APPELLEE ONE-HALF OF THE GROSS AMOUNT OF THE CIVIL SERVICE RETIREMENT SYSTEM PENSION.
 [VI] THE COURT ABUSED ITS DISCRETION IN THE DELAYS BY THE TRIAL AND THE ISSUING OF THE DECISION, 13 MONTHS AFTER THE FINAL DAY OF TRIAL, IN ADDITION TO THE DELAY OF ALMOST ONE FULL YEAR BETWEEN THE BEGINNING OF THE TRIAL AND THE CONCLUDING HEARING.
 {¶ 4} Appellee brings the following cross-assignment of error for our review:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED ERROR IN MAKING THE DIVISION OF APPELLANT'S NATIONAL GUARD RETIREMENT BENEFITS EFFECTIVE ON THE LAST DAY OF THE TRIAL RATHER THAN ON THE FIRST DAY HE BEGAN TO RECEIVE THEM.
 {¶ 5} For ease of discussion we will be addressing appellant's assignments of error out of order. In his first assignment of error, appellant takes issue with the trial court's valuation method used to determine the percentage of the National Guard pension to be awarded to appellee. Appellant entered the United States Army in July 1965, and served on active duty from that date until 1978, at which time he became a reserve member of the Army National Guard. The parties were married in May 1974. Appellant began receiving benefits from the National Guard pension in July 2003.
 {¶ 6} It is recognized that complex valuation issues are raised when determining the marital share of a pension such as appellant's National Guard pension where the retirement benefits are earned through a combination of active and reserve duty. This is so because pension benefits of this nature are not based on the number of years of service, but rather are based on the number of points earned during the member's *Page 4 
service. Therefore, appellant suggests the appropriate valuation method to determine what portion of the National Guard pension was earned during the marriage is what we will refer to for simplicity's sake as the "point" method, which is based upon points accumulated during service in the military, rather than upon years of service. As stated previously, the "point" method is the method used by the military to determine the pension benefit for reserve retirees. Appellee, on the other hand, suggests that the use of a traditional coverture fraction based upon the number of years of service is more appropriate. In this instance, the trial court appears to have issued appellee a distributive award that is based on the number of years appellant was in the military.
 {¶ 7} The Uniformed Services Former Spouse Protection Act ("USFSPA") was passed by Congress in 1982, and gives state courts the authority to treat military retired pay as marital property and divide it between the spouses. Passage of the USFSPA was prompted by the United States Supreme Court decision McCarty v. McCarty (1981), 453 U.S. 210, 101 S.Ct. 2728, which precluded state courts from dividing military retired pay as an asset of marriage. The USFSPA, among other things, limits the amount of the member's retired pay that can be paid to a former spouse to 50% of the member's disposable retired pay. Section 1408(e)(1), Title 10, U.S. Code. While specifying how an award of military retired pay must be expressed, the USFSPA is silent with respect to how a division of assets is to be calculated. Ohio's enabling statute, R.C. 3105.171(F) authorizes a division of a pension as marital and separate property, but also, does not speak to a method of valuation.
 {¶ 8} Mr. David Kelley was the only expert to testify in this matter regarding pension benefits. Mr. Kelley explained that the most appropriate way to determine what *Page 5 
portion of a pension that is based upon the number of points earned during service, rather than the number of years of service, constitutes marital property, is to use the "point" method of valuation. Mr. Kelley testified that utilizing the "point" method is the "most logical, rational way, equitable way of [determining the marital portion of a pension such as this]." (Tr. at 66.) According to Mr. Kelley, the "point" method actually results in the amount of the pension that was earned during the marriage.
 {¶ 9} Using the "point" method, appellee's portion of the National Guard pension would be calculated by multiplying one-half times the fraction of points earned during the marriage over total points earned times the amount of the pension. Here, it is undisputed that appellant earned a total of 5876 points and 2693 of those points were earned during the marriage. Thus, under the "point" method, appellee would be entitled to one-half of 2693/5876, or one-half of 45.83 percent of the pension amount.
 {¶ 10} Mr. Kelley did prepare a report, at appellee's request, using the "years" method of valuation. Using this method, appellee's portion of the National Guard pension would be calculated by multiplying one-half times the number of years of service during the marriage over the total number of years of service, times the pension amount. Though he believes the "point" method provides the most equitable results, Mr. Kelley acknowledged that courts often determine what method is going to be used for pension valuations, and that this may vary in any given case. The trial court's rationale for deviating from the "point" method was the parties' length of marriage and the fact that appellant's reserve duties caused him to be absent from his duties at home and his legal practice for various periods of time. *Page 6 
 {¶ 11} In Faulkner v. Goldfuss (2002), 46 P.3d 993, the Supreme Court of Alaska stated:
 * * * The marital share of a pension is typically determined by the coverture fraction, whose numerator is the number of months of employment during coverture, and whose denominator is the total number of months of employment at the time of vesting. But where the value of retirement benefits is not directly related to the length of employment — such as when retirement benefits will be determined by the number of points earned as a result of the nature and frequency of the service rendered — the coverture fraction should be modified so that the numerator becomes the number of points earned during the period of coverture, and the denominator becomes the total number of points earned. Because Kim's retirement is determined in part by the number of points she will have earned — Kim earns one retirement point for each day of active duty-it was error to determine the marital share of Kim's retirement simply based on the number of months of employment during coverture rather than the number of points earned during coverture. We therefore remand for additional findings.
Id. at 1003. (Citations omitted.) See, also, In re Marriage ofPoppe (1979), 97 Cal. App.3d 1.
 {¶ 12} In In re Marriage of Beckman (1990), 800 P.2d 1376, the Supreme Court of Colorado remanded a matter for a determination of whether the computation of military benefits earned through both active and reserve duty was more appropriately based on a point system rather than on a system based on years. Therein, the court stated:
 The military benefit is based on points which are converted into years of service. Since the basis of years of credited service is points, the coverture fraction for military benefits must be determined in terms of points rather than years, as is normally the case. Use of a simple years of service computation rather than recognition of the point system will, in some *Page 7 
situations lead to inequitable conclusions. The greatest potential for distortion of the marital share of the benefit occurs in situations where the member of the military retirement system switches from regular component to reserve component service.
Id. at 1380-81, quoting W. Troyan, "Procedures for Evaluating Retirement Entitlements Under Non-ERISA, Retirement Systems for Marriage Dissolution Actions," 3 J.P. McCahey, ed., Valuation Distribution of Marital Property § 46.34(1) (1990).
 {¶ 13} Here, as in Beckman and Faulkner, we are presented with a military pension earned by a combination of both active and reserve duty, not simply active duty as in the cases relied upon by appellee wherein appellate courts have upheld the divisions of military pensions based on a traditional coverture fraction. See, e.g., Scott v.Scott, Franklin App. No. 03AP-411, 2004-Ohio-1405 (calculating a military pension consisting of active duty using a "years" method);Randolph v. McCullough (Sept. 21, 2000), Mahoning App. No. 99-CA-161 (using a "years" method to determine the marital share of a military pension for a retiree who served on active duty); Baker v. Baker (Jan. 19, 1996), Seneca App. No. 13-95-36 (concerning a military retiree with only active duty service in the military).
 {¶ 14} We agree with the rationale of the Faulkner court, and find that in an instance such as this where the value of the retirement benefit is not directly related to the length of employment, but rather is dependent on the number of points earned during service, the coverture fraction should be modified to reflect the number of points earned during the marriage and the total number of points earned, rather than reflect the number of years of service during the marriage and the total number of years of service. While the latter method may be appropriate in instances where a military retirement is earned *Page 8 
while the participant is entirely on active duty, such method does not lead to an equitable conclusion in a situation where retirement is earned from a combination of reserve and active duty. Faced only with evidence that the "points" method was the appropriate method for valuating appellant's National Guard pension, we find that the trial court abused its discretion in issuing a distributive award based on the number of years of service, and in failing to utilize the "point" method to calculate appellee's portion of the National Guard pension. Accordingly, we sustain appellant's first assignment of error, and remand this matter to the trial court for additional findings.
 {¶ 15} Because we sustain appellant's first assignment of error, and recognize that the remand may affect the other arguments made by appellant regarding the National Guard pension and the arguments made by appellee, we decline to address those arguments.
 {¶ 16} In his fifth assignment of error, appellant argues that it was error for the trial court to award appellee one-half of the gross amount of the Civil Service Retirement System pension ("CSRS") without making any adjustments for the fact that appellant elected a joint and survivorship annuity in favor of appellee for which there is a deduction. With respect to the CSRS pension, the trial court stated that the parties should equally divide the gross amount of the benefit, which is approximately $20,000 per year. The trial court also required each party to pay any taxes arising out of such award. While it would appear more equitable to divide the net proceeds, i.e., after the deduction for the annuity, there may indeed have been an equitable reason behind the trial court's use of the gross proceeds despite the annuity deduction, as is suggested by appellee. However, though it may appear on its face to be an abuse of discretion, because there are no findings, nor *Page 9 
any basis given for the use of the gross proceeds, we are unable to conduct a meaningful review of this portion of the trial court's decision, and are compelled to remand this matter to the trial court so that it may consider this award, and either alter it, or provide a basis for using the gross proceeds. To this extent, appellant's fifth assignment of error is sustained.
 {¶ 17} In his second, third, and fourth assignments of error, appellant takes issue with the trial court's award of spousal support, its allocation of certain properties, and its award of attorney's fees. However, because these matters were undeniably based, at least in part, on the division of the National Guard pension, and we recognize that these equitable determinations may very well be affected by our disposition of appellant's first and fifth assignments of error, we decline to address the same. Instead, we instruct the trial court to consider its award of spousal support, its allocation of assets and liabilities, and attorney's fees in light of our prior dispositions. We also urge the trial court to review the stipulations made by the parties to ensure the stipulations have been included in the trial court's consideration and in its final order.
 {¶ 18} In his sixth assignment of error, appellant suggests the trial court abused its discretion in delaying this matter. While there appears to have been a relatively lengthy period of time between the trial and the final judgment in this case, as appellee contends, there does not appear to be any specific instance of which appellant has made us aware in which the delay prevented an equitable conclusion to this matter. We are remanding this matter to the trial court for consideration of various issues. However, we find no evidence that the delay in this matter contributed to the issues raised on appeal. Therefore, we overrule appellant's sixth assignment of error. *Page 10 
 {¶ 19} For the foregoing reasons, appellant's first and fifth assignments of error are sustained, appellant's sixth assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations is reversed in part, and the matter is remanded to that court for further proceedings consistent with this opinion.
Judgment reversed and remanded.
BRYANT and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6C, Article IV, Ohio Constitution. *Page 1