2012 ME 56

**Keri L. BOJARSKI**

v.

**Robert G. BOJARSKI.**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 1, 2012.
Decided: April 12, 2012.

Robert G. Bojarski, appellant pro se.

Kenneth P. Altshuler, Esq., Childs, Rundlett, Fifield & Altshuler, LLC, Portland, for appellee Keri L. Bojarski.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Robert G. Bojarski appeals from a divorce judgment entered in the District Court (Portland, *Eggert, J.*) ending his marriage to Keri L. Bojarski. Robert argues on appeal that the court erred by (1) failing to allocate to Robert the tax exemptions with respect to two of the couple's four children; (2) determining the marital portion of Robert's military retirement benefit based on the period of time that Robert was in military service during the marriage rather than on the number of service points Robert earned during the marriage; (3) finding incorrectly the amount of marital debt owed on a particular credit card; (4) making certain assumptions regarding Robert's tax liability; (5) dividing incorrectly the marital debt; and (6) declining to order a downward

deviation from Robert's child support obligation pursuant to 19–A M.R.S. § 2007 (2011) with respect to weeks during the summer that Robert has primary custody of the children.[1] Because the court erred in certain respects in its division of marital property and debt and in allocation of dependent tax exemptions, we vacate the property division portion of the judgment and remand the matter to the District Court for further proceedings.

## I. CASE HISTORY

[¶ 2] The record reflects that Robert and Keri Bojarski were married in September 1997 and have four children (two sets of twins, ages nine and seven). Keri filed a complaint for divorce in April 2010. The court held a hearing in June 2011 at which both parties appeared and testified, Keri represented by counsel and Robert representing himself.

[¶ 3] Keri is a registered nurse working in a pediatrician's office. Robert joined the military in 1988 and is currently in the Ready Reserve. Robert has also been a pilot for Continental Airlines since April 1999. The parties stipulated that Keri's annual income is $45,000, and Robert's annual income is $130,000.

[¶ 4] The record indicates that, as of the date of the divorce hearing, Robert had been in the military for twenty-three years, approximately ten of which occurred before the parties were married and thirteen of which occurred since the parties were married. Robert was in active service for the first nine to ten years of his total military service, then he joined the Ready Reserve.

[¶ 5] Robert testified that, although years of service in the Ready Reserve are factored into the calculation of his retirement benefit, his military retirement pension will be based on the number of points he accumulates during his years of service. He testified that he had earned 4203 points thus far, and of that amount, he believed that 962 were earned during the marriage. The number of points Robert accumulated varied from year to year depending on his duties. When Robert was in active duty before his marriage, he earned 365 points per year. In inactive reserve duty, however, he has earned significantly fewer points per year.

[¶ 6] At the hearing, the parties also addressed their credit card debt, including marital debt owed on a Navy Federal Credit Union (NFCU) credit card. Keri had a document at the hearing that listed her opinion of the value of certain property and debt. In this document, Keri estimated the amount of debt on the NFCU card to be $28,000. Keri stated that she was using the document as a demonstrative aid only "to help her testify" and was not introducing the document as substantive evidence. Keri subsequently offered the document, not as an exhibit, but as a summary of her testimony. The document was admitted as a summary of her testimony only, although she never actually testified that the debt on the NFCU card was $28,000. In contrast, a NFCU credit card statement introduced by Robert was admitted in evidence, stating that the balance owed on that credit card was $22,040 as of June 3, 2011, just three days before the divorce hearing.

1. Title 19–A M.R.S. § 2007(1) (2011) provides that "[i]f the court or hearing officer finds that a child support order based on the support guidelines would be inequitable or unjust due to one or more of the considerations listed under subsection 3, that finding is suffi-cient to rebut the presumption established in section 2005." Subsection 2007(3) lists sixteen criteria that "may justify deviation from the support guidelines." 19–A M.R.S. § 2007(3) (2011).

[¶ 7] Keri also raised the issue of allocating the tax exemptions for the four dependent children at the divorce hearing. She stated that, "I think we've agreed to each party getting two income tax deductions, but I'm not sure I cleared that with Mr. Bojarski," adding that she thought it fair for Robert to receive two dependent income tax exemptions because Robert has the higher income. Keri reiterated this position in later testimony. Robert agreed to dividing the four dependent exemptions equally between the two parties, to which the court replied, "Okay." When subsequently taking evidence as to Robert's future tax liability, the court stated that Robert would be allocated two dependent exemptions for tax purposes.

[¶ 8] Finally, with respect to child support, Robert requested that the court deviate from the child support guidelines by ordering that he is not obligated to pay Keri child support for the weeks during the summer when the children are in Robert's physical custody. Keri submitted a proposed divorce judgment, child support worksheet and order, and income withholding order to the court.

[¶ 9] On June 21, 2011, the court entered a divorce judgment, with an incorporated order of parental rights and responsibilities as stipulated to by the parties, and, adopting the documents as proposed by Keri, a child support worksheet, child support order, and income withholding order. For the distribution of marital property and debt, the court found that the marital home was in foreclosure and possibly subject to a short sale and ordered that Robert pay any deficiency after foreclosure of the marital home as well as any unpaid property taxes. For the allocation of debt, the court ordered that (1) Keri is responsible for the NFCU credit card debt, which the court found to be $28,000, and for the debt on another credit card;

(2) Robert is responsible for the debt on two other credit cards; (3) Robert is responsible for any remaining taxes owed on the parties' joint tax returns; and (4) each party is responsible for any debt associated with the personal property retained by him or her.

[¶ 10] Addressing the marital portion of Robert's military pension, the court ordered that it would be calculated "using a fraction that divides the number of years of creditable [service] during marriage (numerator), into the total number of [years of] creditable service at the time that [Robert] retires (denominator) to determine the marital portion which is to be divided equally."

[¶ 11] The court ordered, as agreed upon by the parties, that Robert and Keri share parental rights and responsibilities, that the children would primarily reside with Keri, but that the children would stay with Robert on certain weekends, certain holidays, and, generally, every other week during the summer vacation. The court ordered Robert to pay Keri $385.04 per week in basic child support and ordered Robert to pay Keri $750 per month in general spousal support for six years. The court's judgment was silent as to the allocation of dependent exemptions for tax purposes.

[¶ 12] Robert filed a motion to reconsider, requesting that the court (1) allocate two dependent tax exemptions to Robert for tax purposes as agreed to at the hearing; (2) amend its finding that the NFCU credit card debt was $28,000 to find that it was $22,000; (3) reconsider its assumptions regarding Robert's income tax liabilities going forward; (4) recalculate the marital portion of Robert's military benefit based on service points earned; and (5) reconsider certain of its decisions given its allocation of debt and Robert's net income.

[¶ 13]   In response, Keri did not object to the allocation of tax exemptions for two dependents to Robert and stated that, because Robert controlled the family finances, she was unaware of the actual balance of the debt owed on the NFCU credit card.   The court denied Robert's motion to reconsider on the grounds that Robert was rearguing matters considered at trial.   Robert brings this appeal.

## II.   LEGAL ANALYSIS

[¶ 14]   We conclude that the court erred in the determination or division of the marital property and debt in certain respects and in allocation of dependent tax exemptions, which we address in turn.

### A.   The Marital Portion of Robert's Military Pension

[¶ 15]   A court's determination that a retirement benefit or account, or a part thereof, is marital or nonmarital property is reviewed for clear error.   *Murphy v. Murphy*, 2003 ME 17, ¶ 20, 816 A.2d 814.   However, we review the application of the law to the facts de novo.   *Warren v. Warren*, 2005 ME 9, ¶ 20, 866 A.2d 97.

[¶ 16]   A state divorce court is permitted to treat military retirement benefits as property that is divisible upon divorce.   *Black v. Black*, 2004 ME 21, ¶¶ 5, 8, 842 A.2d 1280.   In this case, the trial court applied a "time formula" to determine the marital portion of Robert's military benefit, ordering that the marital portion of the benefit will be calculated by dividing the number of years of creditable service during the marriage, though without finding how many years that is, into the total number of years of creditable

service at the time Robert retires.   This is a common method for calculating the marital portion of retirement benefits that accumulate based solely on time in employment, but it is not the proper method for determining the marital portion of a military retirement benefit that will include both active duty service and reserve duty service.

[¶ 17]   Pursuant to statute, military retirement benefits for reservists are based on the total number of points that the service member accumulates.   10 U.S.C.S. §§ 12733, 12739 (1998 & Supp.2011);   *see Dew v. United States*, 192 F.3d 366, 369 (2d Cir.1999) ("Members of the Ready Reserve . . . receive points toward military retirement benefits.").   The benefit that the service member will receive "is the product of the base pay for the rank achieved at retirement and two-and-one-half percent of the points representing the years of service credited."   *Barr v. Barr*, 418 N.J.Super. 18, 11 A.3d 875, 885 (N.J.Super.Ct.App.Div.2011)   (citing   10 U.S.C.S. § 12739).[2]

[¶ 18]   Retirement points can be earned in different ways.   Reservists receive one point per day of active service and fifteen points per year for membership in a reserve component of the armed forces.   10 U.S.C.S. § 12732(a)(2)(A), (C) (1998 & Supp.2011).   Additional points are accrued based on the completion of certain training or instruction, attendance at drills, and funeral   honors   duty.   10   U.S.C.S. § 12732(a)(2) (1998 & Supp.2011).

[¶ 19]   For   a   reservist,   retirement points do not accrue based solely on the length of service.   Instead, points accrue

---

2.   To be eligible for retirement benefits, the reservist generally must be at least sixty years of age and must have accumulated at least twenty years of service, as defined by statute, in which at least fifty or more points were

earned per year.   10 U.S.C.S. §§ 12731(a), 12732(a)(2) (1998 & Supp.2011);   *Bloomer v. Bloomer*, 927 S.W.2d 118, 119 n. 2 (Tex.App. 1996).

based on the nature and frequency of duties and service. 10 U.S.C.S. §§ 12732–12733 (1998 & Supp.2011); *see Faulkner v. Goldfuss,* 46 P.3d 993, 1003 & n. 35 (Alaska 2002); *Woodson v. Saldana,* 165 Md.App. 480, 885 A.2d 907, 910 (2005). "Depending on how active a reservist is, the reservist could accumulate more points before marriage than are accumulated during marriage, even though the reservist has spent more calendar time as a married reservist than as an unmarried one." *Bloomer v. Bloomer,* 927 S.W.2d 118, 120 (Tex.App. 1996). Accordingly, as one court has observed:

> Use of a simple years of service computation rather than recognition of the point system will, in some situations, lead to inequitable conclusions. The greatest potential for distortion of the marital share of the benefit occurs in situations where the member of the military retirement system switches from regular component to reserve component service.

*In re Marriage of Beckman,* 800 P.2d 1376, 1379–80 (Colo.App.1990).

[¶ 20] In a situation in which military retirement benefits are earned entirely while the service member is on active duty, application of the common "time rule" is appropriate. *See Hasselback v. Hasselback,* 2007 Ohio 762, ¶¶ 13–14, 2007 WL 549461 (Ohio Ct.App.2007); *Bloomer,* 927 S.W.2d at 120 & n. 3. However, when, as here, a service member will earn a military pension through a combination of active and reserve duty, courts must calculate the marital share of retirement benefits based on the accrual of retirement points.

[¶ 21] Other courts considering this issue have reached the same conclusion. *See Hasselback,* 2007 Ohio 762, ¶¶ 8–14, 2007 WL 549461 (holding that "in an instance such as this where the value of the retirement benefit is not directly related to the length of employment, but rather is dependent on the number of points earned during service, the coverture fraction should be modified to reflect the number of points earned during the marriage and the total number of points earned"; to base the calculation solely on years of service "does not lead to an equitable conclusion in a situation where retirement is earned from a combination of reserve and active duty"); *accord Faulkner,* 46 P.3d at 1003 & n. 35; *In re Marriage of Poppe,* 97 Cal.App.3d 1, 158 Cal.Rptr. 500, 503–04 (1979) (concluding that "the basis upon which the apportionment was made, years of service during the marriage before separation compared to 'qualifying' years in service, bears no substantial rational relationship to the amount of the pension" for a service member who served on active duty before and after the date of marriage, then joined the reserves); *see also Woodson,* 885 A.2d at 913–14.

[¶ 22] Accordingly, the divorce court erred when it determined the marital portion of Robert's military retirement benefits using a time-based rule rather than a point-accrual-based rule. *See Faulkner,* 46 P.3d at 1003 & n. 35; *Hasselback,* 2007 Ohio 762, ¶¶ 13–14, 2007 WL 549461. On remand, the court must make a factual finding as to the total number of military points that Robert earned during the marriage. The court must then order that the marital portion of Robert's military retirement benefit will be calculated at the time of Robert's retirement by dividing the number of retirement points that Robert earned during the marriage (the numerator), as found by the court, by the total number of retirement points that Robert earns as of the date of his retirement from military service (the denominator). Finally, the court must state how the marital

portion of the retirement benefit will be divided as between the parties.

### B. The NFCU Credit Card Debt

[¶ 23] We review the court's factual determination of the value of marital debt for clear error. *See Theberge v. Theberge,* 2010 ME 132, ¶ 17, 9 A.3d 809; *Hess v. Hess,* 2007 ME 82, ¶ 15, 927 A.2d 391 (stating that marital property includes marital debt within the meaning of 19–A M.R.S. § 953 (2011)). Clear error exists when a finding is unsupported by competent evidence in the record. *Theberge,* 2010 ME 132, ¶ 17, 9 A.3d 809.

[¶ 24] The court's finding that the debt owed on the NFCU credit card was $28,000 is clearly erroneous. Keri never testified to the amount of the debt on that credit card, although she listed the debt as being $28,000 in her proposed divorce judgment. She admitted in her opposition to Robert's motion for reconsideration that she was "unaware of the actual balance of said debt." In contrast, Robert introduced a credit card statement at the divorce hearing, apparently admitted for substantive purposes, which showed the balance on the card to be $22,040 as of three days before the hearing. Accordingly, the court's finding that the value of the debt on the NFCU credit card was $28,000 is not supported by competent evidence in the record and is clearly erroneous.

### C. Allocation of Dependent Tax Exemptions

[¶ 25] We review the court's allocation of dependent tax exemptions for an abuse of discretion.[3] *See State ex rel. Pathammavong v. Pathammavong,* 268 Neb. 1, 679 N.W.2d 749, 758 (2004); *In re Marriage of Milesnick,* 235 Mont. 88, 765 P.2d 751, 754 (1988).

[¶ 26] Although it has authority to do so,[4] the divorce court did not allocate the four dependent tax exemptions as between Robert and Keri in the divorce judgment or in its blanket denial of Robert's motion to reconsider. As a result, pursuant to the Internal Revenue Code, all four exemptions may be claimed by Keri in a taxable year as the parent with primary residence of the children for the greater part of the year. 26 U.S.C.S. § 152(c)(4)(B), (e) (2011); *see* 26 U.S.C.S. § 151(a), (c) (2011); 36 M.R.S. § 5126 (2011).

[¶ 27] This result is, however, contrary to the agreement of the parties, and, more importantly, *see generally Tapman v. Tapman,* 544 A.2d 1265, 1267 (Me.1988) (stating that a court is not bound by an agreement of the parties), contrary to the court's acknowledgement and apparent agreement to this allocation at the divorce hearing. The trial transcript unambiguously evidences the parties' agreement to allocate two of the four dependent tax

**3.** We view the allocation of dependent tax exemptions in this case as an aspect of the division of marital property, *see, e.g., Nadeau v. Nadeau,* 2008 ME 147, ¶ 17, 957 A.2d 108, although it is sometimes treated as an aspect of an award of child support, *see* 19–A M.R.S. § 2007(3); *Coppola v. Coppola,* 2007 ME 147, ¶¶ 1, 24, 938 A.2d 786. In either event, the matter is reviewed for an abuse of discretion.

**4.** Pursuant to 26 U.S.C.S. § 152(e)(1) and (2) (2011), the noncustodial parent may claim a dependent as an exemption if the custodial

parent releases claim to the exemption for the taxable year in a written declaration that the noncustodial parent attaches to his tax return. "A majority of state courts has held that state courts may use their equitable powers to allocate the dependency exemption to the noncustodial parent and to order the custodial parent to execute the waiver." *Piso v. Piso,* 761 A.2d 1215, 1218 (Pa.Super.2000); *see In re Marriage of Milesnick,* 235 Mont. 88, 765 P.2d 751, 753–54 (1988).

exemptions to Robert,[5] and it reflects the court's statements that the divorce judgment would reflect that agreement. Additionally, the court referenced that allocation of dependent tax exemptions when considering Robert's tax liability at the divorce hearing, indicating that various aspects of the divorce judgment would be based on Robert's being allocated two dependent exemptions for tax purposes.

[¶ 28] We therefore conclude that the court erred when it did not allocate two dependent exemptions to Robert.

## D. Remaining Issues on Appeal

■ [¶ 29] Contrary to Robert's contentions, the court did not abuse its discretion in declining to deviate from the guidelines for Robert's child support obligation, pursuant to 19–A M.R.S. § 2007, with respect to weeks during the summer in which Robert has primary custody of the children. *See Young v. Young,* 2009 ME 54, ¶ 8, 973 A.2d 765; *Dep't of Human Servs. v. Monty,* 2000 ME 96, ¶ 10, 750 A.2d 1276.[6]

[¶ 30] Finally, because we vacate the portion of the judgment dividing the marital property and debt and allocating the dependency exemptions, we do not reach the merits of Robert's contentions that the court inequitably divided the marital debt or that the court erred in making certain assumptions as to Robert's tax liability. Those issues will necessarily be reviewed when the court reconsiders on remand the division of marital property and debt.

The entry is:

The portion of the divorce judgment relating to the valuation and division of marital property and debt and allocation of dependency exemptions is vacated. The judgment is affirmed in all other respects. Remanded for further proceedings consistent with this opinion.

---

5. Additionally, Keri did not object to allocating two dependent tax exemptions to Robert in her opposition to Robert's motion to reconsider the divorce judgment.

6. We conclude that the court should address an additional matter on remand. The divorce judgment provides that the value of the benefits or accounts of Robert's Continental Airlines retirement plans, one of which may be a defined benefit plan and the others defined contribution plans, are to be divided evenly between the parties. The judgment does not, however, explicitly find that the values stated of the benefits or accounts are marital (nor have we found competent record evidence supporting the value stated for the 401(k) plan or Continental Plan B) or provide when or how, exactly, the marital portion of those benefits or accounts are to be divided.

On remand, the court should make explicit factual findings as to the marital portion, or instruct the parties on how the marital portion will be determined, of Robert's benefits or accounts under the two Continental Airlines plans; clarify when and how the marital portion of those plan benefits or accounts are to be divided, taking into consideration whether account values fluctuate; and order, as it did with respect to Robert's military pension plan, that qualified domestic relations orders be executed as contemporaneously as possible with the entry of the divorce judgment in order to implement the division of the marital portions of the benefits or accounts of those two plans.