**Robert A. CAMPBELL**

v.

**Leatrice I. CAMPBELL.**

Supreme Judicial Court of Maine.

Argued Jan. 8, 1992.
Decided Feb. 26, 1992.

---

against the other. We hold that the parent's action is relevant to the divorce court's consideration only if the court finds by clear and convincing evidence both 1) that the parent willfully misused the protection process in order to gain a tactical advantage in the divorce proceeding, and 2) that in the particular circumstances of the divorcing couple and their children, that willful misuse tends to show that the acting parent will after the divorce have a lessened ability and willingness to work with the other parent in their joint responsibilities for the children.

In allocating parental rights and responsibilities in the divorce action between Robert A. and Leatrice I. Campbell, the Superior Court (Oxford County, *Alexander, J.*) awarded to Mr. Campbell the primary physical residence of the Campbells' two sons, then aged 10 and 8. The court treated as a determinative factor in that decision the circumstances of Mrs. Campbell's prosecution of a protection from abuse proceeding against Mr. Campbell concurrently with the early stages of the divorce action.

We vacate the divorce judgment and remand the matter to the Superior Court for reconsideration in light of the principles we here set forth.

Ronald P. Lebel, Rocheleau, Fournier & Lebel, P.A., Lewiston, for plaintiff.

Toby H. Hollander, Robert A. Laskoff, P.A., Lewiston, for defendant.

Christopher Leighton, Asst. Atty. Gen., Augusta, for amicus curiae.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

McKUSICK, Chief Justice.

In this divorce case we address for the first time the questions whether and to what extent the trial court in awarding parental rights and responsibilities may consider one parent's unsuccessful prosecution of a protection from abuse complaint

## I.

Mr. Campbell commenced this divorce action in the District Court (South Paris) on July 12, 1989. Six days later Mrs. Campbell filed her answer and counterclaim, along with a notice of removal to the Superior Court. Before the District Court could hear and decide various motions for orders pending divorce filed by both parties, Mrs. Campbell on August 2, 1989, brought a separate protection from abuse proceeding against Mr. Campbell and obtained from the District Court (South Paris, *Batherson, A.R.J.*) an *ex parte* order immediately giving her exclusive custody of the two boys and possession of the marital home in Buckfield.[1] With a modification to give Mr. Campbell shared custody of the children, that arrangement continued until the

---

1. On July 21, 1989, Mr. Campbell had himself unsuccessfully sought an *ex parte* protection from abuse order to obtain custody of the children.

District Court (*Sheldon, J.*) on January 30, 1990, dismissed Mrs. Campbell's protection from abuse proceeding. That dismissal followed extensive joint hearings in the two pending actions between the Campbells. The District Court's opinion and order found that it was "patent" no credible evidence supported Mrs. Campbell's request for a protective order and that she had knowingly signed an untrue assertion that she was in immediate and present danger of physical abuse by Mr. Campbell.[2]

The divorce action was then promptly removed to the Superior Court. After an extensive hearing, the divorce court (Oxford County, *Alexander, J.*) on November 26, 1990, filed its opinion and order announcing the decision that is now here on appeal. In allocating parental rights and responsibilities for the two boys, the divorce court assigned their primary physical residence, along with the marital home in Buckfield, to Mr. Campbell because of "the litigation tactics that Mrs. Campbell had invoked, particularly the baseless and traumatic protection from abuse process."[3] The court found both parties to be good parents who love their children very much and who are both well able to assume the responsibilities inherent in providing their primary residence. The court concluded that "the litigation tactics employed by Mrs. Campbell—tactics harmful to the children—turned the tide in what otherwise would have been a very close and difficult case." In reaching that conclusion the Superior Court relied upon the District Court's findings in the protection from abuse proceeding; the parties had no prior opportunity to present evidence or argument on the issue the court found determinative.

2. In dismissing Mrs. Campbell's protection from abuse proceeding on January 30, 1990, the District Court (South Paris, *Sheldon, J.*) stated in part:

> Leatrice Campbell has employed what is becoming a standard strategy in contested custody cases: seek an ex parte order for protection from abuse to gain custody of the children, transfer the divorce case to the Superior Court in order to delay its resolution, and hope that the case takes long enough to conclude that she can successfully argue the status quo to keep the children in her custody thereafter. Unfortunately, in this case her protection from abuse action is unsupported by credible evidence, so I am left with the problem of having to decide what to do with children whose custodial parent has abused process in order to gain their custody.
>
> That there is no credible evidence supporting her request for a protective order is patent. Although there is some room to argue that Mr. Campbell drinks too much, and everyone agrees that he likes guns, there is no evidence that he has committed any act of physical abuse against Mrs. Campbell since 1985; the fact that she has been living with him since then, without any assertion that he has abused her during that period, strongly suggests that her resort to allegations of abuse now is a means to a different end than her own protection. Her own witness, [ ], observed only that Mr. Campbell was uncivil to Mrs. Campbell: grounds for divorce, to be sure, but nothing resembling grounds for protection from abuse. I conclude that Mrs. Campbell's signed assertion in her Complaint for Protection from Abuse that "I am in immediate and present danger of physical abuse by the Defendant" was untrue when she signed it, and that she knew it was untrue. She sought an ex parte abuse order because she wanted custody of her children, who were then with Mr. Campbell, and not because she wanted or needed any protection from abuse.

3. In its opinion and order of November 26, 1990, in the divorce action, the Superior Court (Oxford County, *Alexander, J.*) stated in part:

> The protection from abuse process is intended and important as a defensive vehicle to provide short term protection for children and adults from actual or imminent abuse. As used, or abused in this case, it was perverted into an offensive weapon providing tactical advantage, dominant custody and a drain on the litigating resources of the other party . . . at great cost to [the] children's emotions. . . .
>
> . . . .
>
> Parties considering such inappropriate offensive use of the *ex parte* protection from abuse process must understand that this tactic is not without risks both to their children and their ultimate objectives in divorce proceedings. It may be argued that the court should consider questions of appropriate parental rights without regard to the tactics the parties have used during the course of the divorce proceeding. Certainly the parties may use any means legally available to achieve their ends. However, if parties seeking responsibility for children use tactics which aggravate the strain and tension which the divorce imposes on children and act with callous disregard for the psychological well-being of children, the court may certainly consider such relevant in ultimate parental rights determinations.

Mrs. Campbell appeals, challenging only the assignment of the children's primary residence and related decisions of the Superior Court.

## II.

By statute, 19 M.R.S.A. § 752(5) (Supp. 1991),[4] the controlling consideration in a divorce court's award of parental rights and responsibilities is the best interests of the children. In turn, the statute lists thirteen factors that the court is instructed to consider in determining the children's best interests in the matter. *Id.* To respond to the question posed by this appeal, we must define the circumstances in which one parent's prosecution of a protection from abuse proceeding against the other is relevant to one or more of those statutory factors. *See* M.R.Evid. 401. Because we here define those circumstances as a novel matter, we remand to the Superior Court for reconsideration of its parental rights allocation.

First, the court's decision on remand should recognize that it is the children's best interests after the divorce that control a parental rights award. To choose the parent with whom children will have their primary residence subsequent to the divorce, the divorce court may properly consider only the children's best interests in the same period of time. Evidence of tactical actions by a parent before entry of the divorce judgment, even if possibly adverse to the children's best interests at the time of those *pendente lite* actions, is relevant to the parental rights decision only if those actions tend to show that the children's best interests will be adversely affected in the period after the divorce case has been concluded by entry of a final judgment. To give any greater effect to a parent's resort to protection from abuse proceedings would be to impose punishment upon that parent for past actions, something that has no place in framing a divorce judgment that will advance the future best interests of the children. *Cf. Huff v. Huff,* 444 A.2d 396, 398 (Me.1982) (divorce court erred by awarding custody to mother because of father's contempt of court).

Second, the divorce court's decision on remand should articulate what relevance Mrs. Campbell's prosecution of a protection from abuse proceeding has to any of the thirteen "best interest" factors listed in section 752(5), *see* n. 3 above, as applied to the particular circumstances of the present case. Among those factors that the statute requires the court to consider in awarding parental rights and responsibilities, three factors stand out as potentially implicated if one parent has abused the protection process. Those factors, identified by the letters H, I, and J, may be compendiously described as each parent's ability and willingness to work with the other parent in carrying out their joint responsibilities toward the children. Analysis leads us to

---

**4.** 19 M.R.S.A. § 752(5) (Supp.1991) provides in full:

 **5. Best interest of the child.** The court, in making an award of parental rights and responsibilities with respect to a minor child, shall apply the standard of the best interest of the child. In applying this standard, the court shall consider the following factors:
**A.** The age of the child;
**B.** The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;
**C.** The preference of the child, if old enough to express a meaningful preference;
**D.** The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;
**E.** The stability of any proposed living arrangements for the child;
**F.** The motivation of the parties involved and their capacities to give the child love, affection and guidance;
**G.** The child's adjustment to the child's present home, school and community;
**H.** The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;
**I.** The capacity of each parent to cooperate or to learn to cooperate in child care;
**J.** Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;
**K.** The effect on the child if one parent has sole authority over the child's upbringing;
**K-1.** The existence of a history of domestic abuse between the parents; and
**L.** All other factors having a reasonable bearing on the physical and psychological well-being of the child.

conclude that a parent's tactical abuse has a bearing upon the children's best interests after the divorce judgment only if that evidence reasonably supports an inference in the particular circumstances of those parents and those children that, during the children's remaining years of minority, that parent will have a diminished ability and willingness to work cooperatively with the other in discharging their joint parental responsibilities. In other words, there must be a demonstrable nexus between the misuse of the protection process at the time of the ongoing divorce litigation and the children's best interests after the divorce litigation is concluded. The divorce court cannot adequately determine whether that nexus exists unless the divorce court itself, independently of the District Court's earlier dismissal of the protection from abuse proceeding, examines the totality of the circumstances of the family and the litigation between the parents. In making that independent examination, the divorce court must accord the parties an opportunity to present evidence and argument.

■ Third, the divorce court's decision on remand should be arrived at in a way that does the least damage to the strong public interest in having available an expeditious and effective means of protecting victims of domestic abuse.[5] Plainly the legislature enacted the protection from abuse statute, 19 M.R.S.A. §§ 761–A to 770–B (Supp.1991), for the purpose of meeting a pressing societal need. The statute expressly declares "domestic abuse [to be] a serious crime against the individual and society, producing an unhealthy and dangerous family environment ... and creating an atmosphere that is not conducive to healthy childhood development." *Id.*, § 761–A(1). The public interest would, then, be disserved if a spouse were discouraged from requesting a protection order by a fear that if the request is unsuccessful, a divorce court will automatically weigh the mere denial against that spouse in its award of parental rights and responsibili-

ties. Although any evidence that is predictive of post-divorce detriment to the children's best interests is relevant to deciding questions of parental rights and responsibilities, the very real danger of chilling the legitimate resort to socially beneficial protection proceedings requires a divorce court to consider the abuse of the protection process only with special safeguards. To be adequate, those safeguards, we believe, must be two-fold: 1) a requirement that the divorce court articulate findings of precisely defined foundational facts before it considers, in its award of parental rights, a parent's abuse of the protection process; and 2) a requirement that those foundational facts be proven by the heightened standard of clear and convincing evidence.

Specifically, to satisfy the M.R.Evid. 401 definition of relevant evidence, the divorce court shall find and expressly state the following foundational facts: (1) the parent prosecuting the protection proceeding had no reasonable ground for it; (2) that parent knew or ought to have known there was no reasonable ground for it; (3) that parent's primary purpose in the protection proceeding was to gain a tactical advantage in the divorce action; and (4) that parent's action in the particular circumstances of the divorcing couple and their children supports a reasonable inference that during the children's minority after the divorce that parent will be less able and willing to work with the other parent in carrying out their joint responsibilities for the children. If these foundational facts are established correctly, there need be little fear of chilling any good faith resort to protection from abuse proceedings.

To reduce the risk of error in establishing those foundational facts, it is further appropriate in the circumstances to require that they be proven by a standard higher than a mere preponderance. Appellate courts fix a standard of proof for the trial courts in order "to instruct the factfinder concerning the degree of confidence our

---

**5.** The Attorney General of the State of Maine has filed an amicus brief urging that the public interest in the unfettered availability of protection from abuse orders should lead us to forbid any consideration of misuse of the protection process in a divorce court's award of parental rights and responsibilities. We reject that absolutist approach to protecting the public interest.

society thinks he should have in the correctness of the factual conclusions for a particular type of adjudication." *Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 150 (Me.1984). The strong public interest in the ready availability of effective protection orders against domestic abuse, as balanced against the relatively weaker private interest in the admission of any evidence that is relevant to the parental rights determination, demands that the divorce court should have a higher than ordinary degree of confidence in the correctness of its findings of foundational facts; namely, the degree of confidence that goes with the intermediate standard of clear and convincing proof. *Id.* The divorce court should have an abiding confidence that the evidence before it proves its foundational factfindings to be correct to a high probability. *Id.* at 154. That heightened standard of proof, applied to the precisely defined factfindings required for relevance, will for all practical purposes eliminate any possibility of a chilling effect upon the good faith prosecution of protection from abuse proceedings.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.