1997 ME 35

**Carolyn J. CLOUTIER, f/k/a
Carolyn J. Lear**

v.

**Craig M. LEAR.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 14, 1997.

Decided March 3, 1997.

John F. Barnicle, Moncure & Barnicle, Brunswick, for plaintiff.

Joanne Kroll, Rockland, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

[¶ 1]   Carolyn J. Cloutier, f/k/a Carolyn J. Lear, appeals from the judgment entered in the Superior Court (Knox County, *Marsano, J.*) affirming the judgment of the District Court (Rockland, *Staples, J.*), granting the motion of Craig M. Lear seeking the modification of the divorce judgment to provide that the primary residence of the parties' two minor children be with Craig and establishing Carolyn's visitation schedule with the children.  Carolyn contends that (1) the trial court failed to apply the correct legal standard by determining that a change in circumstances had occurred;  (2) the trial court erred by finding the change in circumstances was sufficiently substantial in its effect on the best interests of the children to justify a modification of the primary residence of the children;  and (3) the trial court abused its discretion by not considering all the factors set forth in 19 M.R.S.A. § 752(5) (Supp.1996) in determining the best interests of the children.  We affirm the judgment.

[¶ 2]   The record discloses the following facts:  Following an uncontested hearing, the parties were granted a divorce by a judgment dated February 6, 1992, providing, *inter alia*, that the parties share parental rights to and responsibilities for the parties' two minor children;  that the primary residence of the children be with Carolyn;  and that Craig have reasonable rights of access to the children and contact with and by the children at all reasonable and proper times. With the consent of the parties, the judgment was modified on August 5, 1993, to provide a specific schedule for contact between the children and Craig.  On June 13, 1995, Craig filed the present motion.  At the time of the hearing on this motion, Natasha, the elder of the parties' children, was 12 years of age and Whitney was 8 years of age. Following a hearing in the Superior Court on Carolyn's appeal, a judgment was entered affirming the October 3, 1995, judgment of the District Court granting Craig's motion, and Carolyn appeals.  When, as here, the Superior Court acts as an intermediate appellate court, we review directly the decision of the District Court. *Knight v. Knight,* 680 A.2d 1035, 1037 (Me.1996).

[¶ 3]   Carolyn first contends that by excluding from evidence events prior to Au-

gust 5, 1993, the trial court failed to apply the correct legal standard in determining that a change of circumstances had occurred. She argues that the trial court could only make this determination by comparing circumstances that existed prior to the August 5, 1993, order with those circumstances existing since the 1993 order. We disagree. We have previously stated:

> [T]he question that the court must first consider on a motion to modify a custody arrangement is whether there "[h]as occurred *since the prior custody order* a change in circumstances sufficiently substantial in its effect upon the best interests of the children as to justify a modification of the custody arrangement."

*Ehrlich v. Bloom,* 585 A.2d 809, 812 (Me. 1991) (quoting *Villa v. Smith,* 534 A.2d 1310, 1312 (Me.1987) (emphasis added)). Accordingly, the trial court properly confined the evidence to the time period relevant to the issue before it.

[¶ 4] Carolyn next contends the trial court erred in finding a change in circumstances sufficiently substantial in its effect on the best interest of the children to warrant a modification of the primary residence of the children. We disagree. In connection with both the original divorce judgment and any motions for a change of the primary physical residence "the sensitive questions relating to the upbringing of minor children of divorced parents must of necessity be committed to the sound judgment of the trial [court] who hears the witnesses who describe the relevant circumstances of the case." *Boutin v. Dionne,* 458 A.2d 426 (Me. 1983). Accordingly, we review for an abuse of discretion the trial court's evaluation of the substantiality of the effect on the children's interests of any factual change. *Philbrick v. Cummings,* 534 A.2d 1307, 1308 (Me. 1987). The burden is on the moving party to establish by a preponderance of the evidence that such a change has occurred. *Id.* We review the trial court's finding of the historical facts of a change for clear error. *Id.*

[¶ 5] Here, the court heard evidence, *inter alia,* of Carolyn's denigration of Craig to the children as well as the testimony of Carolyn's sister that she also had spoken ill of Craig to the children. The children's stepfather, as well as Erik Sherin, a counselor and therapist who had spent time with the children, testified that Natasha had an adult-to-adult relationship with Carolyn rather than that of parent-child. Sherin opined that as a result Natasha wants to parent Carolyn, would fabricate if she thought it would serve the purpose of protecting her mother, has become involved as a player in the parents' relationship in an unhealthy way, and because of her strong identification with the strife between the parties and her "parentification", she is at risk.

[¶ 6] The record also reflects that in the course of the court's conference with the children Natasha became emotionally distraught when asked if she enjoyed being with her father. She tearfully advised the court she was afraid to be alone with him because of an incident when he threatened a particularly offensive form of discipline and an incident involving a tape recorder. Both incidents allegedly occurred prior to or during Natasha's sessions with Sherin. Sherin testified Natasha had never expressed fear of her father or of his home. The court stated, "[t]his blatant inconsistency causes this Court to reasonably infer that Natasha's statements were prompted and her feelings in this regard, controlled by her mother and/or her mother's family."

[¶ 7] The court found that since August 5, 1993, the following had occurred and that these occurrences "constitute a change sufficiently substantial in its effect on the best interest of the children to warrant a modification of the parent-child contact":

(a) The Plaintiff has failed to comply with the Court Orders on a number of occasions.

(b) The Plaintiff has denigrated the Defendant to his children and has created period of turmoil during the arranging and exchanging associated with the prescribed visitation.

(c) Plaintiff has frustrated contact with Defendant and the children's grandmother for unacceptable reasons, to wit: Defendant's Motions to modify property division and the pending Motions.

(d) Plaintiff has refused to communicate directly with Defendant concerning visits and other matters but has insisted on communicating through the children.

(e) Plaintiff has encouraged the older child to become involved in the strife that exists between the parties.

(f) Plaintiff has allowed the bitterness and rancor associated with the marriage and divorce to militate against her supporting if not encouraging a stable, nurturing and bonding relationship between Defendant and his children. She has been successful with the older child if not the younger.

(g) The older child, Natasha, is evidencing significant emotional problems because of the strife essentially created by Plaintiff.

Our review of the record discloses no clear error in the court's finding of the historical facts of change nor did the court abuse its discretion by its determination that these facts constitute a sufficiently substantial change in its effect on the best interests of the children to justify a modification of the parent-child contact.

[¶ 8] Finally, Carolyn contends that the court abused its discretion by improperly elevating some of the factors set forth in 19 M.R.S.A. § 752(5) [1] over others in determining the best interests of the children. She argues that the court's emphasis on those factors designated as "H., I., and J."

of section 752(5) altered the requisite standard to one of Carolyn's contempt of court orders. We disagree. We have previously noted that the court is entitled to presume that once its order has been issued, parents will abide by it peaceably and work cooperatively to make it serve the best interests of their children, and that "no court should attempt to accommodate any continuing animosity of the parents." *Sheldon v. Sheldon*, 423 A.2d 943, 946 (Me.1980). The court "must seek not merely to preserve the child from harm, but discern 'as a wise, affectionate and careful parent' what custody arrangements will further the child's best interest." *Cyr v. Cyr*, 432 A.2d 793, 796 (Me. 1981) (citation omitted). The application of the numerous factors set forth in section 752(5) bearing on the court's consideration of the best interest of a child is necessarily an individualized process. *Daigle v. Daigle*, 609 A.2d 1153, 1154 (Me.1992). "[T]he court does not abuse its discretion by determining that the best interest of the child requires developing the best possible relationship with *both* parents." *Sheldon v. Sheldon*, 423 A.2d at 946.

[¶ 9] Here, the record reflects that the court carefully considered and addressed each of the factors set forth in section 752(5). In doing so, the court properly considered, *inter alia*, the willingness of each parent to encourage and maintain the other parent's frequent and continuing contact with their children, and found Craig to be far more

---

1. 19 M.R.S.A. § 752(5) provides:

**5. Best interest of the child.** The court, in making an award of parental rights and responsibilities with respect to a minor child, shall apply the standard of the best interest of the child. In applying this standard, the court shall consider the following factors:

**A.** The age of the child;

**B.** The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;

**C.** The preference of the child, if old enough to express a meaningful preference;

**D.** The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;

**E.** The stability of any proposed living arrangements for the child;

**F.** The motivation of the parties involved and their capacities to give the child love, affection and guidance;

**G.** The child's adjustment to the child's present home, school and community;

**H.** The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;

**I.** The capacity of each parent to cooperate or to learn to cooperate in child care;

**J.** Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;

**K.** The effect on the child if one parent has sole authority over the child's upbringing;

**K–1.** The existence of a history of domestic abuse between the parents;

**K–2.** The existence of any history of child abuse by a parent; and

**L.** All other factors having a reasonable bearing on the physical and psychological well-being of the child.

willing; Carolyn's encouragement and/or allowance of Natasha to assume the role of adult-to-adult resulting in her unhealthy involvement in the strife between the parents, as opposed to Craig's maintenance of a parent-child relationship with the children; and the harmful effect on the children of the denigration of their father by Carolyn and her family. The court determined based on its consideration of all factors that for the children to have a "continued and significant exposure to Plaintiff's conduct . . . will surely and significantly impair if not destroy their relationship with their father." On this record, we conclude the court did not abuse its discretion by determining that it is in the best interests of the children that their primary residence be with Craig.

The entry is:

Judgment affirmed.

