2010 ME 132

**Linda A. THEBERGE**

v.

**Michael J. THEBERGE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 23, 2010.

Decided: Dec. 14, 2010.

Ronald P. Lebel, Esq., Kelly L. Turner, Esq., Skelton, Taintor & Abbott, Auburn, ME, for Michael J. Theberge.

Scott J. Lynch, Esq., Hornblower, Lynch, Rabasco & VanDyke, P.A., Lewiston, ME, for Linda A. Theberge.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

JABAR, J.

[¶ 1]   Michael J. Theberge appeals from a divorce judgment entered in the District Court (Lewiston, *Lawrence, J.*), arguing that the court erred in assessing the value of several items of marital property and in giving his ex-wife, Linda A. Theberge, a mortgage on his real estate to secure his spousal support obligation. He also contends that a portion of the judgment is ambiguous. Linda cross-appeals, arguing that the court abused its discretion by revising the duration of the spousal support award from an indefinite term to a fixed term in a post-judgment order, when neither party had requested such a change.   We affirm the judgment.

## I.  BACKGROUND

[¶ 2]   Linda Theberge filed for divorce from Michael Theberge in March 2007, after almost thirty-three years of marriage.   Prior to the divorce hearing, the parties stipulated to the value and distribution of certain items of marital property. They did not stipulate to the value of Michael's interest in two businesses, In Town Apartments, LLC, and Atkinson Associates;  to the value of two loans payable to Michael, one from Atkinson and one from MTM Real Estate Management (MTM);  or to the distribution of an investment property on Fairview Avenue in Auburn (Fairview property).   The court heard the following evidence relevant to these items of marital property.

[¶ 3]   Michael holds a one-third interest in InTown Apartments, a company that owns an apartment building in Lewiston. Michael testified that the company's property was worth $350,000 and its long-term liabilities were $325,000.   However, he estimated that if the property sold for $350,000, he would experience a loss of about $10,000 after commission and closing costs.

[¶ 4]   Michael holds a twenty-seven and eight-tenths interest in Atkinson Associates, a general partnership that owns a commercial and residential rental property in Lewiston.   According to a 2007 financial report, the partnership has a mortgage of $900,000,   accrued   liabilities   totaling $17,143,[1] and other accounts payable of $56,940, including $33,141 of real estate taxes.   At the time of the hearing, however, two of the partners had paid some or

---

1.   These liabilities are accrued interest payable of $2750, other accrued liabilities of $8979, and tenant security deposit liability of $5414.

all of the property tax debt. In addition to these other liabilities, Atkinson owed the partners a total of $323,905 in loans, with Michael's loan receivable totaling $128,526.

[¶ 5] Atkinson listed its rental property for sale from August 2005 through February 2008. During this period, Atkinson received offers of $1,100,000, $900,000, and $975,000. On the first offer, the buyer ultimately backed out, and the partners rejected the other offers as too low. At the time of the hearing, the realtor testified that she would not list the property above $900,000 due to vacancy rates and other considerations. Atkinson's accountant testified that, assuming a six percent real estate commission, the property would have to sell for $1,260,000 to pay all liabilities. He further testified that, assuming the same commission rate, it would have to sell for $994,000 to cover liabilities excluding the amounts owed to the partners. Based on these figures, Michael estimated that his interest in Atkinson had no monetary value and that he would not be repaid for his loan to the partnership.

[¶ 6] Michael holds a promissory note, which was reduced to a money judgment, against MTM in the amount of $39,546. MTM last made a payment around June 2008. Based on Michael's personal knowledge of MTM's current financial state, he testified that the prospects for full repayment did not "look[ ] good" and valued the loan at $20,000.

[¶ 7] Finally, Michael and his partner hold the Fairview property as tenants in common. They have renovated the property and listed it for sale.

[¶ 8] In the divorce judgment, the court valued the one-third interest in InTown at $8333, the twenty-seven and eight-tenths percent interest in Atkinson at $13,885, Michael's loan receivable from Atkinson at $128,526, and the MTM judgment at $39,546. It distributed these as-

sets to Michael. In valuing the loan receivable from Atkinson, the court noted that although it was unlikely Michael would collect cash for this loan, it "may still be significant in settling the affairs of the partners as the partners seek reimbursement from each other of contributions made to the partnership that were not matched by [Michael]." The court cited payment of over $14,000 in real estate taxes by two of the partners as an example of such an unmatched contribution.

[¶ 9] The court valued the marital interest in the Fairview property at $177,238. It distributed all right, title, and interest in the property to Michael, subject to any encumbrances, including the mortgage, taxes, and insurance, except that it awarded Linda $88,119 as her interest in the property.

[¶ 10] Net of liabilities, the court awarded Michael marital assets totaling $276,859 and awarded Linda marital assets totaling $389,462. The court also awarded Linda general spousal support of $500 a month, taking into consideration the length of the parties' marriage, Linda's earning capacity of $19,760, and Michael's earning capacity of $52,000. The spousal support obligation would terminate upon Linda's remarriage or cohabitation with a domestic partner, the death of either party, or further order of the court. The court ordered Michael to purchase a $115,000 life insurance policy to secure the support obligation against his premature death.

[¶ 11] After the court's judgment, both parties filed motions for findings of fact and conclusions of law requesting the facts relied upon by the court in valuing InTown and Atkinson. *See* M.R. Civ. P. 52(a). Michael also requested findings regarding the value of the Atkinson loan and the MTM judgment. Further, pursuant to M.R. Civ. P. 59(e), he asked the court (1)

to clarify the order with regard to the Fairview property, and (2) to amend the provision ordering him to secure his support obligation with a life insurance policy, given that he has significant health issues and there was no evidence that he was insurable.

[¶ 12] In its order on the cross-motions for findings of fact and on Michael's motion for clarification and amendment of the judgment, the court provided findings on its valuation of InTown and the MTM judgment, reduced the value of Atkinson from $13,885 to $5548, and declined to offer further explanation for valuing Michael's loan to Atkinson at its full value. The court also clarified and amended the distribution of the Fairview property and the spousal support award.

[¶ 13] The court valued InTown by accepting that it was worth $350,000 and had debts totaling $325,000, resulting in a net worth of $25,000. Michael's one-third interest was therefore $8333. The MTM judgment was given its full face value because the court did not find credible Michael's testimony that it was worth only $20,000. The court valued Atkinson by finding that the $975,000 purchase offer represented the fair market value, and then subtracting the $900,000 mortgage and $55,346 of other debts and expenses, to arrive at a value of $19,654. Michael's twenty-seven and eight-tenths interest was $5548.[2]

[¶ 14] The court next clarified the distribution of the marital interest in the Fairview property. The court reduced the amount Linda was to receive as her inter-

est in the property from $88,119 to $79,692, and ordered that it be liquidated.[3] The court repeated that "all right, title and interest" in the real estate belonged to Michael, and that he was responsible for any encumbrances on the property.

[¶ 15] Finally, the court amended the spousal support award in two ways. First, although neither party had requested it, the court limited Michael's obligation to ten years and three months. The order states that the obligation will terminate upon the first to occur of the following events: the passage of August 30, 2019; the death of either party; Linda's cohabitation or remarriage; or modification by the court. Second, the court changed the security provision from a life insurance policy to a mortgage for at least $32,500 against Michael's interest in a certain piece of real estate, or "some other form of security that is acceptable to [Linda]." It ordered that the mortgage would remain in effect until the occurrence of one of the events terminating spousal support, until Michael paid $61,500 in spousal support, or until the substitution of a security acceptable to Linda.

[¶ 16] Michael's appeal and Linda's cross-appeal followed.

## II. DISCUSSION

### A. Valuation of the Marital Property

[¶ 17] Property valuations by the court are factual findings that we review for clear error. *Nadeau v. Nadeau*, 2008 ME 147, ¶ 42, 957 A.2d 108, 120. A

---

**2.** More specifically, the court multiplied .2777 by $19,654. Thus, the $5548 value appears to contain a scrivener's error, which pursuant to M.R. Civ. P. 60(a) may be raised with the trial court.

**3.** Michael argues that the court's order amending the judgment contains a scrivener's

error regarding the value of the interest awarded to Linda. Pursuant to M.R. Civ. P. 60(a), the proper method for raising such an allegation is to file a motion with the trial court seeking a correction. Accordingly, we will not address this issue further.

finding is clearly erroneous if it is unsupported by competent evidence in the record. *See Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793, 795. When a party makes a request for findings pursuant to M.R. Civ. P. 52(a), "we review the original findings and any additional findings made in response to the motion for findings to determine if they are sufficient, as a matter of law, to support the result and if they are supported by the evidence in the record." *Jarvis v. Jarvis*, 2003 ME 53, ¶ 18, 832 A.2d 775, 779.

[¶ 18] When reviewing the evidence in the record, we recognize that the trial court is not bound to accept any testimony or evidence as fact, and that determinations of the weight and credibility to assign to the evidence are squarely within the province of the fact-finder. *See Wandishin v. Wandishin*, 2009 ME 73, ¶ 13, 976 A.2d 949, 953. The court may accept a property valuation offered by one of the parties or may assign a different value based on the court's independent assessment of the evidence presented. *Id.*; *Peters v. Peters*, 1997 ME 134, ¶ 14, 697 A.2d 1254, 1258–59. Furthermore, although the court has a duty to make findings sufficient to inform the parties of the reasons for its conclusions and to allow for effective appellate review, there is no requirement that a court identify the reasoning it uses to reach each finding of fact. *Potter v. Potter*, 2007 ME 95, ¶ 8, 926 A.2d 1193, 1196; *accord Wandishin*, 2009 ME 73, ¶ 19, 976 A.2d at 954.

[¶ 19] In the instant case, the court's valuations of Atkinson, Michael's loan to Atkinson, InTown, and the MTM judgment are supported by competent evidence in the record. The court could properly rely on the amount of a purchase offer to set the net worth of Atkinson, and the court's finding on the amount of Atkinson's debt is within the range established by the testimony and exhibits. Although we do not know exactly which debts the court included in its total, it appears that the court excluded over $14,000 in property taxes that two of the partners had paid. The court's finding is sufficient for appellate review and is supported by the record evidence.

[¶ 20] Similarly, the court did not err in valuing Michael's loan to Atkinson at its full value given the court's determination that the loan would be valuable to him as the partners settled their affairs and sought reimbursement for contributions made to Atkinson and not matched by Michael. Finally, the court did not accept Michael's valuations of InTown or the MTM judgment, and we will not disturb the weight and credibility determinations of the trial court.

### B. Ambiguity in the Divorce Judgment

[¶ 21] Michael argues that, upon his post-judgment motion, the court should have clarified the parties' rights and responsibilities regarding the Fairview property pending sale. We review a trial court's grant or denial of a motion seeking clarification and amendment of a judgment for an abuse of discretion. *Medeika v. Watts*, 2008 ME 163, ¶ 7, 957 A.2d 980, 982. A judgment requires clarification when it is not "sufficiently clear and definite so that it is susceptible of enforcement" or when "those called upon to understand or obey it" would be misled. *Id.* ¶ 7, 957 A.2d at 983 (quotation marks omitted).

[¶ 22] The divorce judgment distributes the Fairview property to Michael, subject to "any encumbrances," and the court's post-judgment order clarifies that Linda was awarded a liquidated amount representing her interest in the property. Contrary to Michael's contention, the judg-

ment clearly establishes that it is his responsibility to pay the costs associated with the property. The court did not abuse its discretion in declining to provide further clarification upon Michael's motion.

## C. Securing the Spousal Support Obligation

[¶ 23] Michael contends that the court misapplied the spousal support statute by ordering that Michael's spousal support obligation terminate upon his death, but also requiring Michael to secure the obligation in the event of his "premature death." He also argues that the $32,500 mortgage creates the possibility of a windfall to Linda and that the judgment improperly permits the parties to replace the mortgage security with another security "that is acceptable to Linda."

[¶ 24] We review an award of spousal support for an abuse of discretion. *Potter*, 2007 ME 95, ¶ 6, 926 A.2d at 1195. The statutory presumption is that a spousal support obligation will terminate upon the death of either party, unless the court's order provides otherwise. 19–A M.R.S. § 951–A(8) (2009); *Hess v. Hess*, 2007 ME 82, ¶ 26, 927 A.2d 391, 397. If a spousal support award reveals an intent for the support to continue beyond the life of the obligated party, the award will be binding upon that party's estate. Levy, *Maine Family Law* § 8.5 at 8–25 (6th ed. 2009). The court may require "the obligated party to maintain life insurance or to otherwise provide security" for the payment of a spousal support obligation that is designed to survive the payor's death. 19–A M.R.S. § 951–A(7) (2009); *Warner v. Warner*, 2002 ME 156, ¶ 51, 807 A.2d 607, 625; *see also Prue v. Prue*, 420 A.2d 257, 260 (Me.1980) (affirming the use of a mortgage as security under an earlier version of the spousal support statute).

[¶ 25] The court properly applied section 951–A(7) in requiring Michael to secure his spousal support obligation. The spousal support award demonstrates an intent for the support to continue beyond the life of the payor. As the judgment is written, if Michael dies "prematurely," the spousal support obligation will remain in effect until one of the contingencies listed in the divorce decree occurs: Linda's death, remarriage, or cohabitation with a domestic partner; payment of $61,500 in spousal support; the passage of August 30, 2019; substitution of a security in a form or amount acceptable to Linda; or further order of the court. The spousal support obligation is binding on Michael's estate and is secured by the mortgage. The court also acted within its discretion in setting the amount of the security and in permitting the parties to agree to substitute some other form of security for the mortgage.

## D. Amending the Term of the Spousal Support Award

[¶ 26] In her cross-appeal, Linda argues that the court could not amend the term of the spousal support obligation on the parties' cross-motions for further findings of fact and to amend the judgment when neither party requested such an amendment. She also contends that the amendment was an abuse of discretion.

[¶ 27] Contrary to Linda's contention, we have held that, upon a motion made pursuant to M.R. Civ. P. 59(e) "a court is not restricted to making only those changes requested by the moving party." *Most v. Most*, 477 A.2d 250, 259 (Me.1984). The court may substantively amend its initial order "both as requested and on its own initiative." *Id.* Here, considering the financial circumstances of the parties and the distribution of a greater share of the marital property to Linda, the

court acted within its discretion in amending the spousal support obligation from an indefinite term to a fixed term.

The entry is:

Judgment affirmed.