2012 ME 72

**George W. SLOAN III**

v.

**Erin M. CHRISTIANSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 26, 2012.

Decided: May 31, 2012.

Erin M. Christianson, appellant pro se.

Ardith Keef, Esq., Falmouth, for appellee George Sloan.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Erin M. Christianson appeals from a judgment entered in the District Court (Portland, *Kelly, J.*) granting George W. Sloan III's motion to modify the parties' 2008 divorce judgment by awarding sole parental rights and responsibilities and primary residence of the parties' now six-year-old son to Sloan. Christianson argues on appeal that the court erred in (1) finding that Christianson coached her son to say that he is afraid of and has been physically and emotionally abused by Sloan; (2) finding that Christianson's claims that Sloan had abused her were not proved and suggesting that they were in fact fabrications; (3) awarding sole parental rights and responsibilities and primary residence of the son to Sloan; (4) finding the reports and testimony of the guardian ad litem credible despite alleged inconsistencies and inaccuracies in that evidence; and (5) failing to make thorough and accurate findings in the court's twenty-six-page judgment. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] This statement of the case history is taken from evidence in the record and findings stated in the trial court's judgment that are fully supported by evidence in the record. When, as here, a

party to an appeal asserts that the trial court's findings are not supported by evidence in the record, we review the record, and reasonable inferences that may be drawn from the record, in the light most favorable to the trial court's judgment to determine if the findings are supportable by competent evidence. *See Pelletier v. Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903; *Pratt v. Spaulding*, 2003 ME 56, ¶ 10, 822 A.2d 1183.

[¶ 3] After close to three years of marriage, George W. Sloan III filed a complaint for divorce from Erin M. Christianson in May 2007. The parties have one son, who was a year and a half old when the complaint was filed.

[¶ 4] On April 27, 2007, approximately one week before Sloan filed for divorce, Christianson had filed a complaint for protection from abuse on behalf of herself and the son. Christianson alleged in that complaint that Sloan had been emotionally and verbally abusive to Christianson for over five years, up to and including the day before she filed the complaint. Christianson affirmatively stated in the complaint that Sloan had never threatened her with a firearm.[1]

[¶ 5] The court (Biddeford, *Foster, J.*) issued a temporary protection from abuse order the same day, which precluded Sloan from seeing the son. After a final hearing a little over two weeks later, the court

dismissed Christianson's complaint, finding that Christianson had failed to prove that Sloan had abused her or the son.

[¶ 6] On June 12, 2007, in the then-pending divorce proceeding, the court (*Kelly, M.*) issued an interim parental rights and responsibilities order, directing that the parties share parental rights and responsibilities and that the father have supervised visits with the son or such other visits as agreed to by the parties. A guardian ad litem was appointed for the son on the same day (and reappointed on July 29, 2010).

[¶ 7] Beginning August 7, 2007, the court (*Kelly, M.; MG Kennedy, J.*) entered orders providing for increasing amounts of unsupervised and, ultimately, overnight visitation between Sloan and the son. Soon thereafter, Sloan had two unsupervised visits with the son that began and ended at a visitation center. The trial court found, and the evidence supports the trial court's finding that, after these visits, Christianson

> demanded that [the son] be strip searched by the personnel at the visitation center for evidence of bruising after each visit. When the center refused to do so, she took [the son] to the emergency room after both visits to have him checked for bruising, and reported to the emergency room staff that [Sloan]

---

1. Christianson also did not allege in her April 27, 2007, complaint that she had concerns that Sloan had ever physically abused the son. This is in contrast to her testimony at the hearing on the motion to modify at issue in this appeal. In that 2011 testimony, Christianson stated that Sloan was alone with the son during the 2007 Patriot's Day weekend storm, which occurred from April 15 to 18, 2007, and that Christianson returned home to find the son with bruises on his neck, to have what seemed to be damage to his vocal chords, and to have regressed to infant-like behavior, which Christianson alleged was due to the son's experiencing an extreme trauma

while in Sloan's care. Despite her alleged concerns, Christianson did not seek medical care for the son until July 2007.

It is typically appropriate to confine the evidence on a post-judgment motion to modify to evidence of events that occurred since the prior custody order had been entered, which in this case was the 2008 divorce judgment. *See Cloutier v. Lear*, 1997 ME 35, ¶ 3, 691 A.2d 660. However, a limited review of these earlier events provides context for and informs what the court found was Christianson's current effort to characterize Sloan as abusive.

had been abusive to [the son] in the past.

No evidence of bruising was reportedly found on the son on either occasion. This behavior so troubled the guardian that, in her September 20, 2007, report "she recommended that there be an immediate transfer of primary residence from [Christianson] to [Sloan] if the pattern of unnecessary emergency room visits were to continue."

[¶ 8] On January 22, 2008, the court (*Driscoll, M.*) entered an agreed divorce judgment awarding shared parental rights and responsibilities of the son to Sloan and Christianson, primary residence of the son to Christianson, and unsupervised contact with the son to Sloan on days when Sloan was not working. This effectively allowed the son to spend almost half of his time with Sloan.

[¶ 9] Christianson filed a motion to modify Sloan's contact with the son in October 2009. This motion included no allegation that Sloan was abusive to her or to the son.

[¶ 10] On November 20, 2009, Sloan filed the motion to modify that is at issue in this appeal. Sloan moved to modify the divorce judgment to obtain sole parental rights and responsibilities and primary residence of the son, alleging that a substantial change in circumstances had occurred in that Christianson had taken numerous steps to alienate the son from Sloan since the divorce judgment had been entered.

[¶ 11] On April 20, 2010, two days after the evidence demonstrated and the court found that the son had a "happy and relaxed" day at Sloan's house, Christianson filed a second complaint for protection from abuse on behalf of herself and the son against Sloan. In this complaint she alleged that the son had reported that Sloan had physically abused him, and she realleged incidents addressed in the 2007 protection from abuse complaint that the court had found not proved. Christianson also alleged for the first time that Sloan had threatened her with a firearm before and during their separation in April 2007, events she had not alleged in her 2007 complaint for protection from abuse or on her guardian intake form.

[¶ 12] The court (Portland, *Powers, J.*) entered a temporary protection from abuse order against Sloan the same day, precluding contact between Sloan and the son. Thereafter, Sloan had no contact with the son from April 18, 2010, until early 2011. The evidence indicated that throughout this period of no contact, the son's therapist and daycare provider observed that the son's fears and stress related to his father continued, if not intensified; that he spoke of times when his father had said or done increasingly abusive things; and his daycare worker observed that incidents of the son's misbehavior escalated at the end of 2010 and beginning of 2011, all despite the complete lack of contact between Sloan and the son for more than eight months.

[¶ 13] The temporary order for protection from abuse was modified in November 2010 to allow professionally supervised visits to begin. In order to obtain visitation with the son, Sloan had to agree to attend anger management counseling. After four sessions, Sloan's counselor reported that Sloan did not present with anger management issues.

[¶ 14] In January 2011, Sloan attempted to have a supervised visit with the son—his first visit with the son since the previous April. The visit had to be cancelled because, even though the son had had no contact with Sloan for over eight months, the son was apparently terror-stricken at the idea of seeing Sloan and refused to visit with him. The court found that, given that the son had had "absolute-

ly no contact" with Sloan since April 18, 2010, when the son had a "happy and relaxed" visit with Sloan, "it is highly improbable that [the son's] terror of his dad [at the January 2011 visit] is attributable to anything that his dad said or did."

[¶ 15] In February 2011, Sloan was able to have one ten-minute supervised visit with the son, the only actual visit Sloan had had between May 2010 and July 2011. At that visit, the son again demonstrated "intense stress." Christianson made no attempts to reassure or comfort him. Nonetheless, the son eventually had a short visit, which went well. Sloan gave the son a toy, which pleased the son, who thanked and smiled at Sloan. When Christianson returned to pick the son up, however, she purposefully left the toy at the visitation center after complaining "so vociferously to the visit supervisor . . . that she had to be told . . . that she should not talk in that way in [the son's] presence." Evidence before the court indicated that a psychologist later opined that Christianson's action in ensuring that the son could not keep the toy that Sloan had given him may suggest that Christianson "will go to any length to foil the relationship between" the son and Sloan, "even if the result is the emotional abuse of the child."

[¶ 16] After that one, short supervised visit, the trial court found that Christianson had taken the son to a pediatric clinic "reporting symptoms of a child's heart attack as a result of [the son's] visit with his dad." The court found, as supported by the evidence, that Christianson "exploited the trip to the clinic to create the impression that [the son's] health was put at risk by his visit with his father." After that clinic visit, the examining physician reported to the guardian that, despite Christianson's reports, the son's " 'heart rate was normal and there was no apparent medical issue at that visit. [The doctor] also reported that Ms. Christianson asked her to look at bruises on [the son's] leg and asked if the bruises could be documented since he just had a visit with his father.' " The doctor, however, reported to the guardian that the faint bruising apparent on the son's shins were typical for a child that age and that "none of [the bruises] looked recent enough to have occurred during his visit with his father."

[¶ 17] The doctor then stated, according to the evidence, that "she has caught Ms. Christianson in lies and exaggerations, in what [the doctor] believes are efforts to keep [the son] away from his father." The trial court found it remarkable and irrational that Christianson would request that the doctor check for bruises following a visit with Sloan that was supervised by multiple people, including the son's therapist, and further found that Christianson's conduct "in taking [the son] to a physician immediately after the visit reinforces in [the son] the idea that his father is a danger to him."

[¶ 18] As the court further found, the doctor's observation that Christianson lies about the son's medical condition in order to suggest that Sloan is abusive is corroborated by other evidence. Most notably, despite Christianson's testimony that the doctor had advised that "[the son] had suffered damage to his vocal chords as a result of the trauma" that he allegedly "endured at the hands of his father in 2007," Christianson admitted on cross-examination that the doctor's notes indicated no finding of "any evidence of damage to [the son's] vocal chords." The trial court found that Christianson's "claim was untruthful and she knew that," and the court indicated it was further "struck by [Christianson's] total lack of embarrassment in being detected in this untruth."

[¶ 19] In early 2011, Sloan and Christianson underwent psychological and parenting skills evaluations. The examining

psychologist concluded that Sloan is not a risk for child abuse or neglect and is unlikely to be physically aggressive or abusive toward anyone, that he would tend to be passive in a relationship, and that he is "quite capable of being a stable, warm, empathic, and predictable attachment figure to his son." The same psychologist could not provide conclusions with respect to Christianson because she was extremely defensive, rendering the testing results invalid. The psychologist did opine, based on his interviews with Christianson, that there is "the risk that [she] is stirring up [the son's] fear of his father, and in doing so, triggering the very anxiety that she claims to be able to handle."

[¶ 20] On June 28 and July 1, 2011, the court held a hearing on Sloan's motion to modify, Christianson's motion to modify, and Christianson's complaint for protection from abuse, which, consistent with good practice, had been joined for consideration with the post-judgment motions to modify. Sloan and Christianson, each represented by counsel, appeared and testified at the hearing.

[¶ 21] On July 11, 2011, the court terminated the April 10, 2010, temporary order for protection from abuse against Sloan, finding that Christianson failed to prove that Sloan had abused her or the son, and denied Christianson's motion to modify. At the same time, the court entered an extremely detailed, twenty-six-page order granting Sloan's motion to modify the divorce judgment. The court thoroughly reviewed the evidence, implicitly finding that a substantial change in circumstances had occurred to support a modification of parental rights and responsibilities. The court found that Christianson's claims of abuse were "wholly unsubstantiated" and that the son's fear of Sloan is the product of Christianson's "calculated campaign to convince [the son] that his father poses a danger to him despite the absence of any evidence of abuse."

[¶ 22] After meticulously applying each of the factors stated in 19–A M.R.S. § 1653(3) (2011) to determine the appropriate residence and the best interest of the son, the court allocated sole parental rights and responsibilities and primary residence to Sloan. The court ordered future professionally supervised visits between Christianson and the son and ordered Christianson to undergo a psychological evaluation and counseling. Concerned for the son's safety if the court's July 2011 order was distributed to counsel in the usual way, the court issued an ex parte order arranging for the transfer of custody of the son before the parties were notified of the court's decision.

[¶ 23] Christianson then brought this appeal without assistance of counsel. She subsequently filed numerous documents with the trial court that she included in her appendix for this appeal, but that were not before the trial court at the hearing on the motions to modify.

## II. LEGAL ANALYSIS

[¶ 24] Christianson makes numerous arguments on appeal. Her arguments each essentially assert that the court erred in making certain findings in support of, and abused its discretion in entering, its order awarding residency and sole parental rights and responsibilities for the son to Sloan.

[¶ 25] We review the court's findings of fact in an order on a post-divorce motion to modify parental rights and responsibilities for clear error, *Desmond v. Desmond*, 2011 ME 57, ¶ 2, 17 A.3d 1234, and will vacate the judgment only if "no competent evidence exists in the record to support it," *Hatch v. Anderson*, 2010 ME

94, ¶ 12, 4 A.3d 904 ("The standard of review of an award of sole parental rights is clear error . . . .").

▮▮▮▮ [¶ 26] We review the court's ultimate decision on a post-divorce judgment for an abuse of discretion or an error of law. *Desmond*, 2011 ME 57, ¶ 2, 17 A.3d 1234. We will find an abuse of discretion only if the decision is "plainly and unmistakably an injustice that is so apparent as to be instantly visible without argument." *Smith v. Padolko*, 2008 ME 56, ¶ 9, 955 A.2d 740.

## A. The finding that the son was coached to fear his father

[¶ 27] Christianson argues that the evidence, primarily in the form of some written professional opinions that were not in evidence, shows that the son was capable of discerning between the truth and a lie, that he exhibited and verbalized fear of Sloan, and that Christianson is a good mother. She argues that the guardian's reports and the judgment failed to refer to this evidence and, apparently, that the court erred in finding, based on the guardian's incomplete reports, that Christianson had coached the son to allege that Sloan abused him.

▮▮▮▮ [¶ 28] There is no indication in the record that most of the particular reports, letters, or notes to which Christianson refers were offered in evidence at the hearing.[2] We do not consider material relating to the merits of an appeal that was not included in the trial court record.[3] *See Greaton v. Greaton*, 2012 ME 17, ¶ 2, 36 A.3d 913; *State v. Dumas*, 2010 ME 57, ¶ 25 n. 3, 997 A.2d 760; *see also Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 1 n. 1, 962 A.2d 335 (noting that it is well established that self-represented litigants are held to the same standards as litigants represented by counsel).

▮▮▮▮ [¶ 29] We turn now to the evidence that was before the court at the hearing, keeping in mind certain basic tenets of appellate review. First, because of the trial court's superior vantage point to hear and assess the evidence, we will not substitute our judgment for that of the trial court as to the weight or credibility of the evidence if there is evidence in the record to rationally support the court's result. *Theberge v. Theberge*, 2010 ME 132, ¶ 18, 9 A.3d 809; *Smith*, 2008 ME 56, ¶ 14, 955 A.2d 740. Second, we must consider the evidence, and any reasonable inferences that may be drawn therefrom, in

2. During her cross-examination of the guardian, Christianson stated that a professional who did not testify at the hearing had concluded in 2010 that the son was not coached, and asked the guardian to comment on that, but Christianson's question on cross-examination is itself not evidence, the guardian testified that her opinion would not change even if she saw such a report, and the professional's report was not admitted in evidence.

3. Even if these reports, letters, and notes had been admitted in evidence, we would not be required to conclude that the court clearly erred in finding that Sloan had not abused the son or that Christianson had coached the son to say otherwise. *See Handrahan v. Malenko*, 2011 ME 15, ¶ 18, 12 A.3d 79 (stating that a court is not required to accept an expert's characterization of the evidence, and a court's refusal to adopt an expert's opinion is not clear error).

We additionally observe that Christianson's characterization of some of the reports she relies upon is incomplete. For example, Christianson quotes one report as saying that the son was able " 'to identify an untruthful statement that was made to him and to demonstrate resistance to suggestion,' " but neglects to quote a subsequent statement, which is, "however his ability to demonstrate all these capacities does not assure that he was telling the truth at all times during the interview." Additionally, although the report states, as Christianson notes in her brief, that the son has verbalized fear of the father that must be taken seriously, the report never concludes that the son had, in fact, been abused by Sloan.

the light most favorable to the trial court's judgment. *Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903. Finally, the trial court is not required to accept any testimony or evidence as fact. *Theberge*, 2010 ME 132, ¶ 18, 9 A.3d 809.

[¶ 30] Based on our review of the evidence that was admitted at trial, competent evidence supports the court's findings that Christianson had coached or manipulated the son into being fearful of Sloan when there was no evidence to support a finding that Sloan had, in fact, abused the son. As the court acknowledged in its judgment, there is abundant evidence that the son has told his therapist, the guardian, his daycare provider, and others that Sloan is mean, that he has hit the son, and that the son does not want to see Sloan. However, the documentary and testimonial evidence provides nothing that would compel the court to conclude that Sloan has abused or would abuse the son.

[¶ 31] On the contrary, the evidence, including the testimony of the guardian, the son's daycare provider, the son's therapist, Sloan, and Christianson herself, and reasonable inferences drawn therefrom, supports the court's extensive and specific findings that Christianson has gone to great lengths to generate and instill fear of Sloan in the son.

B. No finding of domestic abuse

[¶ 32] Christianson argues that evidence supported her claim that Sloan abused her and that the court erred in failing to so find, asserting that, regardless of how the evidence was construed, she did not file unfounded complaints for protection from abuse.[4]

[¶ 33] Christianson was given a full opportunity to testify and present other evidence relating to her claims of verbal, emotional, and physical abuse by Sloan, and she did so. The court found that, contrary to Christianson's testimony, which the court found not credible, and despite the prior issuance of temporary orders for protection from abuse, Sloan had not abused Christianson. Further, in its carefully reasoned judgment, the court found, to the appropriate clear and convincing evidence standard, *see Campbell v. Campbell*, 604 A.2d 33, 37–38 (Me.1992), that Christianson has misused the protection from abuse process, with resulting harm to the son, to gain advantage in the parental rights dispute. The trial court is not bound to accept any testimony or evidence as fact, and determinations of the weight and credibility to assign to the evidence are squarely in the province of the fact-finder. *Theberge*, 2010 ME 132, ¶ 18, 9 A.3d 809.

[¶ 34] Based on the multiple, and ultimately unproven, allegations of domestic abuse; the belated allegations that Sloan had threatened Christianson with a firearm; the testimony of Sloan, Sloan's wife, a Spurwink psychologist, the guardian, and Christianson; and reasonable inferences drawn from that evidence, the court's findings are supported by the evidence and are not clearly erroneous.

C. Sufficiency of the court's findings

[¶ 35] Christianson asserts generally that the court erred "in proper, thorough, and accurate documentation within the findings," arguing specifically that (1) the court erred in not addressing certain evi-

---

4. Christianson also refers as support for her argument to "a copy of my conversation with my doctor's office in regards [to] a particular event that occurred directly in front of [the son]," but it is not clear as to what document Christianson refers. There is no indication that any such document was admitted in evidence at the hearing, and we do not consider it on appeal. *See Greaton v. Greaton*, 2012 ME 17, ¶ 2, 36 A.3d 913; *State v. Dumas*, 2010 ME 57, ¶ 25 n. 3, 997 A.2d 760.

dence and credibility issues in its opinion, and (2) the court's findings in the order on appeal contradict "findings" the same judge made in 2007 when ordering supervised visitation with Sloan.[5]

[¶ 36] The court's findings are supported by competent record evidence and, as discussed further below, the written judgment was exceedingly thorough. To the extent the court's order did not address a particular piece of testimony or admitted evidence, it was not required to. *See State v. Gurney,* 2012 ME 14, ¶ 1 n. 2, 36 A.3d 893 ("The court is not required to address each piece of admitted evidence in its findings....").

**D. The decision to award sole parental rights and responsibilities to Sloan**

[¶ 37] Christianson argues that the court abused its discretion when it amended the divorce judgment to award sole parental rights and responsibilities and physical custody of the son to Sloan, because the evidence supports the finding that Christianson is a good and competent parent, and she has not lied about her concerns for the son's welfare.[6]

[¶ 38] Pursuant to 19–A M.R.S. § 1657(1)(A) (2011), an order for parental rights and responsibilities may be modified as circumstances require upon the petition of one or both parents. *Desmond,* 2011 ME 57, ¶ 2, 17 A.3d 1234. A substantial change in circumstances since the entry of the most recent judicial decree can justify the modification, and the

overriding consideration is whether the modification sought is in the best interest of the child, as determined pursuant to the factors stated in 19–A M.R.S. § 1653(3). *Id.* ¶ 3; *Smith,* 2008 ME 56, ¶ 11, 955 A.2d 740.

[¶ 39] The court explicitly found that Christianson is an affectionate, nurturing, devoted parent to the son and has provided him with structure and stability. This, however, is not the end of the inquiry. First, the evidence supports the court's implicit determination that a substantial change in circumstances has occurred since the last parental rights and responsibilities order was entered. *See Coppersmith v. Coppersmith,* 2001 ME 165, ¶ 2, 786 A.2d 602 ("Before a change is made in a child's residential custody, the trial court must find a substantial change of circumstances."). The evidence supports the conclusion that Christianson's consistent damaging efforts to instill unwarranted fear of his father changed the circumstances of the son in substantially negative ways.

[¶ 40] Second, the court properly and very thoroughly applied each of the nineteen factors listed in 19–A M.R.S. § 1653(3) to conclude that it is in the son's best interest for the father to have sole parental rights and responsibilities and primary residence of the son. *See Cloutier v. Lear,* 1997 ME 35, ¶¶ 5–9, 691 A.2d 660 (holding that the court did not abuse its discretion in awarding primary residence of the children to the father because, among other things, the father was more

---

5. This second argument is without merit. The order to which Christianson refers was an interim schedule of rights and responsibilities that the court entered, apparently by agreement of the parties, on June 12, 2007, after which the court entered an order in August 2007 providing for unsupervised visitation between Sloan and the son before the 2008 divorce judgment was entered. Regardless, in deciding Sloan's motion to modify parental rights and responsibilities, the court

was to consider whether circumstances had sufficiently changed since the last custody order, the 2008 divorce judgment, was entered. *See Cloutier,* 1997 ME 35, ¶ 3, 691 A.2d 660.

6. Christianson again bases this argument primarily upon letters that were not admitted in evidence at trial and that we do not consider on appeal. *See Greaton,* 2012 ME 17, ¶ 2, 36 A.3d 913; *Dumas,* 2010 ME 57, ¶ 25 n. 3, 997 A.2d 760.

willing to encourage a continuing relationship with the other parent than the mother, who denigrated the father in front of the children).

[¶ 41] The court did not err in making its factual findings, err as a matter of law, or abuse its discretion in awarding sole parental rights and responsibilities to Sloan. *See generally Hatch*, 2010 ME 94, ¶ 13, 4 A.3d 904.

The entry is:

Judgment affirmed.